**Glenn E. MacDONALD, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

No. 61,2002.

Supreme Court of Delaware.

Submitted: Nov. 6, 2002.
Decided: Jan. 2, 2003.
Rehearing En Banc Denied
March 10, 2003.

Neil R. Lapinski, Swartz, Campbell & Detweiler, Wilmington, for Appellant.

Kim Ayvazian, Deputy Attorney General, Dept. of Justice, Georgetown, for Appellee.

Before WALSH, HOLLAND, and BERGER, Justices.

WALSH, Justice:

In this appeal from the Superior Court, the defendant-appellant, Glenn E. MacDonald, contends that his February 1993 conviction for the first-degree murder of his former girlfriend should be reversed because the trial judge failed, on several occasions, to declare a mistrial, and also made erroneous evidentiary rulings. MacDonald was sentenced to life imprisonment without the possibility of probation or parole and, after some delay, this appeal was filed.[1] We conclude that MacDonald's con-

---

1. Prior to MacDonald's sentencing for first- degree murder, the State charged him with

tentions lack merit, and accordingly, we affirm his conviction.

## I.

MacDonald and Julie Spencer ("Spencer" or the "Victim") were involved in a stormy relationship for roughly three years. The relationship came to an end in January 1990, but MacDonald and Spencer apparently made later attempts to salvage the relationship. During the summer of 1990, Spencer began dating another man, Kevin Schantz. MacDonald, however, continued to pursue Spencer, and apparently threatened grave consequences if she dated anyone but MacDonald.

On Saturday evening, September 29, 1990, Spencer was at home with Schantz and other friends when she received a phone call, and afterward, reported to the group that the caller was MacDonald. Spencer told the group that MacDonald had a videotape, made without her knowledge, of the two engaged in sexual intercourse. During the phone conversation, MacDonald apparently offered to return the tape.

On September 30, 1990, Spencer planned to go roller skating. Prior to leaving, she spoke to Schantz and told him that she planned to go to MacDonald's home at 7:00 p.m. to retrieve the videotape. Spencer also told her mother that she might stop at a friend's home before the skating rink opened at 8 p.m. Spencer was not seen at the skating rink that evening. On October 1, 1990, at 9:45 p.m., Spencer's car was discovered in a parking lot behind the Christiana Mall. Her whereabouts where unknown until October 6,

1990, when her body was recovered in a marshy area in Augustine Beach, Port Penn, Delaware.

MacDonald spoke with the police on several occasions prior to his arrest. First, on October 2, 1990, MacDonald spoke via telephone to Detective Robert Larrimore. During that conversation, which was recorded by the police, MacDonald told Larrimore that he was upset and worried because of the attention he was attracting due to Spencer's disappearance. Next, on October 3, 1990, MacDonald was interviewed by the New Castle County police; his attorney at that time, Darrell Baker, also attended the interview. Finally, on October 9, 1990, MacDonald, again with counsel, was interviewed by the Delaware State Police. On each occasion, MacDonald denied any knowledge of the Victim's whereabouts. Moreover, even after the Victim's body was discovered, MacDonald did not offer any information to the police. MacDonald was indicted in October, 1990, and charged with first-degree murder.

## II.

MacDonald's first trial in March 1992 ended with a deadlocked jury. During a second trial in February 1993, however, MacDonald was found guilty of first-degree murder. On appeal MacDonald argues that various errors during that trial warrant reversal. We address each claim below.

## A.

After discovering the victim's body on October 6, 1990, the Delaware State Police

Criminal Solicitation in the First Degree, Conspiracy in the First Degree, and Attempted Murder, for an alleged plot to murder one of the State's key witnesses against him. Defendant entered into a plea agreement on those charges whereby he waived his right to appeal his murder conviction. We later re-

versed the Superior Court's decision denying MacDonald's petition for postconviction relief on the basis that the guilty plea, and the corresponding waiver of his direct appeal of the murder conviction, was involuntary due to ineffective assistance of counsel. *MacDonald v. State*, 778 A.2d 1064 (Del.2001).

interviewed MacDonald on October 9, 1990. During that interview, McDonald insisted—as he had when previously interviewed by New Castle County police officers on October 3, 1990—that he did not know what happened to the Victim. During his trial, however, MacDonald testified to a different version of events. In essence, MacDonald told the jury that he had been an unwitting accomplice to Allan Smith, MacDonald's friend and, according to MacDonald, the real murderer. Smith had testified as a State's witness in both trials and had given incriminating testimony against MacDonald. On cross-examination, the prosecutor sought to impeach MacDonald with his prior inconsistent statements to police, and the following exchange occurred:

Q: And after all these things that I've listed, you, an innocent man, get still another chance to talk to the police and tell them the story. And this is the first time you talk to the police after you knew Julie's body was discovered. You knew she was murdered and dumped, and yet for ninety-seven pages you never once tell the story you've told this jury today; did you?

A: No, I did not.

Q: Isn't this the first time you've ever publicly told that story?

A: No, it is not.

Q: You tell me where you publicly told this story.

Defense counsel requested that the prosecutor define "publicly," to which she responded "[i]n a courtroom, to the police, to the authorities, to the Attorney General's office." Defense counsel then requested a mistrial on the basis that the prosecutor had improperly "commented on [his] client's failure to testify at the last trial."

 MacDonald argues that the Superior Court's denial of his request for a mistrial constitutes plain error. Because MacDonald expressly moved for a mistrial, however, we review the trial court's denial of the motion for a mistrial under an abuse of discretion standard. *DeJesus v. State,* 655 A.2d 1180, 1207 (Del.1995). Regardless, we conclude that the Superior Court's denial of MacDonald's request for a mistrial survives either standard of review.

 It is well settled that a criminal defendant's silence may not be used against him after he has received governmental assurances through *Miranda* warnings. *See Anderson v. Charles,* 447 U.S. 404, 408, 100 S.Ct. 2180, 2182, 65 L.Ed.2d 222 (1980) (interpreting *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976)). Indeed, a defendant who offers an exculpatory version of events at trial may not be cross-examined on his failure to have told that story on a prior occasion after he had received *Miranda* warnings and chose to remain silent. *Doyle v. Ohio,* 426 U.S. 610, 620, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976). Nevertheless, where a defendant decides to "cast aside the cloak of immunity" and "take[ ] the stand in his own behalf, he does so as any other witness, and within the limits of appropriate rules, he may be cross-examined as to the facts in issue." *Raffel v. United States,* 271 U.S. 494, 497, 46 S.Ct. 566, 568, 70 L.Ed. 1054 (1926).

 The United States Supreme Court has identified the proper scope of cross-examination under the circumstances described above. For example, "the Fifth [and Fourteenth] Amendment[s][are] not violated by the use of prearrest silence to impeach a defendant's credibility." *Jenkins v. Anderson,* 447 U.S. 231, 238, 100 S.Ct. 2124, 2129, 65 L.Ed.2d 86 (1980). In addition, cross-examination based upon prior inconsistent statements made by the defendant does not constitute "unfair use of silence because a defendant who voluntarily speaks after receiving *Miranda*

warnings has not been induced to remain silent." *Anderson v. Charles*, 447 U.S. at 408, 100 S.Ct. 2180. Therefore, the State may properly cross-examine a defendant on his pre-arrest conduct, *Jensen v. State*, 482 A.2d 105, 116 (Del.1984), and on prior inconsistent statements made after he voluntarily waives his *Miranda* privileges. *Anderson v. Charles*, 447 U.S. at 408, 100 S.Ct. 2180.

 Here, the questioning on cross-examination was framed in the context of the defendant's pre-arrest statements to police. The defendant gave several pre-arrest statements to authorities and, even when confronted with the fact that the Victim had been murdered, he failed to implicate Smith. When MacDonald chose to testify at trial he opened the door to impeachment based upon his prior inconsistent statements.

This case is distinguishable from *Doyle*. In *Doyle*, the defendants chose to remain silent upon their arrest and receipt of *Miranda* warnings. *Doyle*, 426 U.S. at 613–614, 96 S.Ct. 2240. At trial, the defendants claimed that they had been framed in the drug transaction at issue. *Id.* During cross-examination, the prosecution impeached the defendants' testimony on the basis of their failure to tell the "frame-up" story to the narcotics agent who arrested them and gave them their *Miranda* warnings. *Id.* The United States Supreme Court reversed, holding that "the use for impeachment purposes of petitioners' silence, at the time of arrest and after receiving *Miranda* warnings, violated the Due Process Clause of the Fourteenth Amendment." *Id.* (footnote omitted).

As noted above, the focus of the State's cross-examination here concerned Mac-Donald's prior inconsistent statements to the police *prior* to his arrest. MacDonald received *Miranda* warnings, but nevertheless, he voluntarily shed his "cloak of immunity" and made several statements to

police. In the exchange noted above, the prosecution specifically focused on Mac-Donald's October 9, 1990 statement to the Delaware State Police, because at that time it was known that the Victim had been murdered. When defense counsel requested a definition of the word "publicly," the State provided a generic list of all of the possible forums in which MacDonald could have told his exculpatory story prior to his arrest.

The purpose of the State's questioning was to demonstrate that MacDonald had ample opportunity to tell his exculpatory version of events, but instead chose to deny any knowledge of the Victim's disappearance. It cannot credibly be argued that simply because defense counsel goaded the State into providing a comprehensive definition of "publicly" that her compliance with that request now gives rise to a tenable *Doyle* issue. The State was not using MacDonald's post-*Miranda* silence for impeachment purposes. Rather, the State properly impeached MacDonald's credibility using his pre-arrest prior inconsistent statements, voluntarily given in spite of his *Miranda* rights. Therefore, it was not an abuse of discretion for the trial judge to deny MacDonald's motion for mistrial.

## B.

 Next, MacDonald argues that the trial court erred by failing to declare a mistrial *sua sponte* when, during cross-examination, the prosecutor stated that MacDonald was represented by counsel during an October 3, 1990 interview with the New Castle County Police. Claims of error not raised below are waived in the absence of plain error. *Lynch v. State*, 588 A.2d 1138, 1140 (Del.1991). Mac-Donald points to the following exchange in support of his argument that a mistrial was appropriate:

[Prosecutor]: Now, at this point in time you had gone and hired yourself an attorney[,] correct?

[Defendant]: Um, sort of.

[Prosecutor]: Well, there's a man named Darrell——

[Defense Counsel]: Could we approach, please?

The Court: Very well

(The following collequy [sic] took place at side bar.)

[Defense Counsel]: He hired himself an attorney, that's it, but Your Honor, I believe it wouldn't be admissible to imply or infer that hiring an attorney is some indication of guilt, and I think it would be grounds for a mistrial. And I think that the prosecutor should stay away from there at this point. That's——

[Prosecutor]: That's all I was going to ask, but I think it's on the record that he did at this point. And Mr. Baker's on the video.

[Defense Counsel]: That's true, but I wasn't sure if you were going any further.

[Prosecutor]: No.

The Court: All right. Are you requesting that I tell the jury that they are not to infer anything——

[Defense Counsel]: Yes, I am.

The Court: —by the fact that someone hires an attorney.

[Defense Counsel]: Yes, I am, Your Honor.

The Court: All right, I'll do that.

(End of sidebar collequy [sic].)

The Court: Ladies and gentlemen of the jury, I would instruct you that you are not to infer anything from the fact that a person may on a particular occasion hire an attorney. And you're certainly not to consider the fact that, if it is a fact, that this occurred as any indication of the guilt of this defendant.

The State contends that the revelations of MacDonald's pre-arrest representation are not grounds for a mistrial because the Sixth Amendment had not yet attached. *Kirby v. Illinois*, 406 U.S. 682, 689, 92 S.Ct. 1877, 1881, 32 L.Ed.2d 411 (1972).

 We have previously held that, because the prosecution has "wide discretion on cross examination[,]" the Superior Court does not abuse its discretion by permitting inquiry into pre-arrest representation. *Jensen*, 482 A.2d at 116. Whatever effect the prosecutor's seemingly innocuous reference to MacDonald's representation may have had, it was promptly limited by the trial court. Moreover, prior to the colloquy at issue, the jury viewed two videotaped interviews with police in which MacDonald was clearly represented by another individual. Additionally, Detective Robert Larrimore testified that MacDonald's lawyer called Larrimore to arrange the first interview conducted on October 3, 1990. Larrimore identified MacDonald's lawyer as Darrell Baker, and told the jury that Baker was present for the October 3, 1990 interview. Defense counsel did not object to this evidence and, given the fact that the trial judge issued a prompt curative instruction upon MacDonald's objection, it was not plain error for the trial judge to fail to *sua sponte* declare a mistrial.

### C.

MacDonald also urges that it was plain error for the trial court to fail to declare a mistrial on the basis of cryptic references to MacDonald's first trial. In particular, MacDonald points to Gia Boyum's reference to "the last trial" and the prosecutor's prefatory statement to Allan Smith regarding his "being on the witness stand a pretty long time back in March 1992." Both the prosecution and the defense used the phrases "prior proceeding" and "previous occasion when you testified under oath" when referring to MacDonald's first

trial. Indeed, the trial judged recognized the success of these efforts, and noted only Boyum's "slip" when she referenced "the last trial." Defense counsel acknowledged this "slip" but did not object, nor did he request that the response be stricken from the record.

■■■■ We have previously noted that a mistrial may be necessary where a jury becomes aware, during a subsequent trial, of a defendant's prior conviction that was later reversed on appeal. *Bailey v. State,* 521 A.2d 1069, 1076 (Del.1987) (citing *Hughes v. State,* 490 A.2d 1034, 1044–47 (Del.1985)). In this case, however, the jury could *at most* only speculate as to the outcome of MacDonald's previous trial. Such speculation, if indeed it even occurred, would not necessarily have led the jury to believe that the trial ended in MacDonald's conviction. *Williams v. State,* 494 A.2d 1237, 1242 (Del.1985). Moreover, because MacDonald waived his right to object to the "slips," or to strike these references to his first trial, he is precluded from any claim of plain error on appeal. *See Lynch,* 588 A.2d at 1140; *Hickman v. State,* 2002 WL 1272154, *1 (Del. Jun. 7, 2002).

### D.

MacDonald also argues that the Superior Court erred by admitting evidence that purportedly amounted to irrelevant, highly prejudicial, and improper character evidence. In particular, MacDonald points to the testimony of various witnesses regarding his behavior toward another woman after a breakup with her, his behavior toward the victim after their breakup but before her death, and the fact that MacDonald's truck bore a license plate depicting a marijuana leaf and the words "arrived stoned." In essence, MacDonald argues that the jury received all of this testimony before it heard any testimony bearing on guilt or innocence, and thus the jury was permitted to infer that MacDonald was a vengeful man, full of rage, who would not hesitate to exact revenge if crossed.

Some of the testimony cited by MacDonald was the subject of a pretrial motion *in limine.* As to this testimony, the trial judge conducted the proper *Getz v. State,* 538 A.2d 726, 734 (Del.1988), analysis and properly permitted the testimony under Delaware Rule of Evidence 404(b). The trial court did not abuse its discretion by admitting this evidence.

■■■■ The other testimony[2] was relevant to establish MacDonald's obsessive attitude toward the victim, and the probative value of this testimony was not substantially outweighed by any danger of unfair prejudice to MacDonald. To the extent that MacDonald objected to this testimony at trial,[3] the trial court did not

**2.** This testimony included: (1) Officer Daniels' testimony regarding Hope Catherine Wright's statement to police concerning the Victim's fear of MacDonald; (2) the Victim's mother's testimony regarding MacDonald's behavior toward her; (3) Jeff Wiley's testimony that MacDonald used Wiley's backyard to "spy" on the Victim after their breakup; (4) Hope Catherine Wright's testimony that MacDonald threatened to tarnish the Victim's reputation if he saw her with another man; (5) the Victim's brother's testimony regarding MacDonald's statement that "there would be trouble" if the Victim's brother attempted to return a necklace that MacDonald gave the Victim; and (6) the Victim's brother's testimony regarding MacDonald's license plate.

**3.** MacDonald suggests that these purported errors should be reviewed under an abuse of discretion standard. His basis for urging this standard of review appears to be a theory of "cumulative abuse of discretion." In other words, because all of this evidence was, in his view, offered to demonstrate his propensity for violence and anger toward women, the admission of such testimony amounted to a "gross and repeated abuse of discretion." Nevertheless, claims of error not raised below

abuse its discretion in admitting the evidence. With respect to the testimony regarding the Victim's fear of the defendant, defense counsel expressly waived any objection,[4] and thus we cannot apply plain error review as to that purported error. *Cf. Hickman v. State*, 2002 WL 1272154, *1 (Del. June 7, 2002) (holding that plain error review unavailable where defendant unequivocally waived right to a *Getz* instruction).

## E.

 Finally, MacDonald argues that the trial court erred by precluding Detective John Alstadt's testimony regarding a notation in the investigation report concerning the amount of time the Victim's body could have been on Augustine Beach. Purported errors regarding the admissibility of evidence and the order of proof are reviewed for abuse of discretion. *Tice v. State*, 624 A.2d 399, 403 (Del.1993). During cross-examination, defense counsel attempted to question Detective Alstadt regarding a notation in the investigation report concerning the victim's time of death. The prosecution objected. During a side-bar discussion, defense counsel learned that the notation actually represented the thoughts of Dr. Hameli, the State's Chief Medical Examiner. Defense counsel terminated the cross-examination of Detective Alstadt, and thereafter secured a subpoena for Dr. Hameli.

For some reason, defense counsel did not call Dr. Hameli during its portion of the trial. The failure to call Dr. Hameli is "indisputably the type of tactical decision trial counsel could make and about which [MacDonald] may not complain on appeal."

*Tice*, 624 A.2d at 403. Therefore, the trial court did not abuse its discretion by limiting the scope of Detective Alstadt's cross-examination.

## III.

We find no error in the various evidentiary rulings of the Superior Court and accordingly AFFIRM the judgment of conviction.

---

are waived in the absence of plain error. *Del.Supr. Ct. R.* 8.

**4.** When the State sought to introduce Hope Catherine Wright's statement through Officer Daniels, defense counsel stated "No objection to it, Your Honor. I assume it's being offered under 3507."