**Charleston S. WILLIAMS, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

**No. 150, 2011.**

Supreme Court of Delaware.

Submitted: Dec. 21, 2011.
Decided: Dec. 29, 2011.

Jan A.T. van Amerongen, Jr., Esquire, Wilmington, Delaware, for appellant.

James T. Wakley, Esquire, Department of Justice, Wilmington, Delaware, for appellee.

Before STEELE, Chief Justice, HOLLAND and RIDGELY, Justices.

HOLLAND, Justice:

The defendant-appellant, Charleston S. Williams ("Williams"), appeals from his conviction for Unlawful Sexual Contact in the First Degree, a lesser-included offense of Rape in the First Degree. Williams raises one claim on appeal. William contends that his conviction should be reversed because the prosecutor improperly prodded the victim to cry in front of the jury. We have concluded that the record evidence does not support that contention. Accordingly, the judgment of the Superior Court must be affirmed.

### Facts

At approximately 4:00 a.m. on August 21, 2009, M.F. was in her apartment in Wilmington, Delaware smoking crack cocaine when Williams began knocking on her door. M.F. knew Williams from prior encounters. After an initial exchange about M.F.'s crack pipe, Williams left.

Williams returned minutes later. When M.F. opened the door, he grabbed her by her throat and pushed her toward the couch. Williams tightened his grip on her neck as they struggled on the couch. Williams eventually forced her to the ground and raped her.

At some point Williams released M.F. and instructed her to come to the front room of the apartment. M.F. disregarded that instruction and was able to escape, while naked, to her parent's home. M.F. was evaluated at Christiana Care later that day for sexual assault. DNA analysis was consistent with M.F.'s account that Williams had raped her.

Williams was charged with Rape in the First Degree. The matter proceeded to a four-day jury trial. During M.F.'s testimony, the following relevant exchanges occurred:

*Re–Direct Examination:*

State: Is there any doubt [ ] in your mind today as you testify that the defendant choked you and raped you? Yes or no, ma'am?

M.F.: No.

(Pause.)

State: Why are you crying?

M.F.: I'm just so angry at him. He didn't have to do what he done. I'm sorry.

State: That's okay. . . .

*Re–Cross Examination:*

Defense: Do you remember in that meeting with [the prosecutor and the detective] and the social worker about a week ago that you were told it would be okay to cry in front of the jury?

M.F.: Yes.

Defense: Yeah. Do you remember that you were told they'll [sic] be a point where you can cry in front of the jury?

M.F.: Yes.

*Re–Direct Examination:*

State: Are you crying because I told you you should cry?

M.F.: I'm crying—that's how I feel, that I shouldn't have been hurt.

State: Is this the first time you cried in front of me?

M.F.: No, it isn't.

After additional re-cross-examination and an attempt at re-direct examination, the trial judge excused the jury and witness and *sua sponte* called a sidebar conference regarding the above exchange. The trial judge described it as "the oddest exchange I've seen in 20 years on the bench and 35 years as a member of the

[B]ar...." The trial judge and counsel discussed the exchange at length. Ultimately, the judge determined a curative instruction was unnecessary.

Williams was found guilty of Unlawful Sexual Contact in the First Degree. The trial judge sentenced Williams to eight years imprisonment at level V, with credit for time served, suspended after six years with decreasing levels of supervision.

### Misconduct Issue Waived

■ The State contends that Williams is barred from bringing his claim on appeal for plain error review because Williams expressly waived any objection for prosecutorial misconduct at trial. This Court has previously found that defense counsel's failure to object at trial, despite inquiry by the trial judge, may give rise to a waiver. In *Hickman v. State*, the defendant claimed on appeal that the trial judge committed reversible error by failing to provide a *Getz* instruction.[1] We found that he had forfeited that claim, stating:

> [T]he record plainly shows that, when the trial judge raised the issue of a potential *Getz* [*v. State*, 538 A.2d 726 (Del.1988) ] instruction, defense counsel affirmatively waived his right to one, noting that he was making a tactical decision intended to minimize the jury's courtroom exposure to Hickman's alleged drug distribution. Hickman's unequivocal waiver of his right to a *Getz* instruction at trial forfeits any claim for plain error review on appeal.[2]

In *MacDonald v. State*, defense counsel acknowledged that "slips" occurred at trial when the prosecutor and a witness referred to the defendant's prior trial—but,

defense counsel did not object or request that the witness's response be stricken from the record.[3] We found that "because MacDonald waived his right to object to the 'slips,' or to strike these references to his first trial, he is precluded from any claim of plain error on appeal." [4]

In this case, defense counsel engaged in an extended colloquy with the trial judge and prosecutor about the conduct challenged on appeal. The discussion occurred because the trial judge raised the issue *sua sponte* during sidebar, not because defense counsel objected. In fact, defense counsel stated to the trial judge:

> Your honor, I would like to say I do not dispute [the prosecutor's] representation to the court in any way that she did not tell this witness to cry. I have never known her in any way to even have a reputation for underhanded tactics or anything like that. However, what I interpreted to be going on was an attempt to elicit the emotional reaction. I do not think she told this witness or instructed this witness to cry when I put you on the stand.

The trial judge then asked whether the attorneys would like to add anything to the record. Defense counsel apologized, and did *not* raise a claim of prosecutorial misconduct, request a mistrial, or pursue a curative instruction. Accordingly, we hold that Williams' claim on appeal for prosecutorial misconduct was waived.

### No Plain Error

Alternatively, if we consider Williams' claim for plain error,[5] it also fails. Williams concedes that he failed to raise a

---

1. *Hickman v. State*, 801 A.2d 10, 2002 WL 1272154, at *1 (Del. June 7, 2002).

2. *Id.*

3. *MacDonald v. State*, 816 A.2d 750, 756 (Del. 2003).

4. *Id.*

5. *Baker v. State*, 906 A.2d 139, 148 (Del.2006).

timely objection below. The trial judge intervened during the re-direct examination and admonished both parties for the unnoticed, persistent questioning about M.F.'s crying. But the trial judge did not directly rule on the issue of prosecutorial misconduct, stating to Williams' trial attorney "[y]ou've been given the opportunity to, I guess, preserve the record to the extent you needed to preserve it. I'm not making any finding or any ruling or issuing any sanction." The trial judge also decided that a jury instruction was unnecessary.

In *Baker v. State*, this Court restated the applicable standards of review for claims of prosecutorial misconduct.[6] We explained "the first step in the plain error review of prosecutorial misconduct mirrors that in the review for harmless error: we examine the record *de novo* to determine whether prosecutorial misconduct occurred. If we determine that no misconduct occurred, our analysis ends."[7] If there was misconduct, we apply the *Wainwright* standard.[8]

■ On appeal, Williams alleges that the prosecutor engaged in misconduct by "preparing an alleged victim to cry in front of a jury and then provoking that crying[.]" In this case, the inquiry ends at the first step because Williams has not shown prosecutorial misconduct. Williams' claim directly contradicts the defense attorney's statements to the trial judge during sidebar, when he stated, "I do not think [the prosecutor] told this witness or instructed this witness to cry...." Additionally, Williams has not shown that the prosecutor's "preparation" was improper. At sidebar, the prosecutor explained to the trial judge:

Your honor, I can just for the record indicate during my interview in trial preparation for [M.F.] when she was crying [I] told her that it would be ok if she did that. I inform every victim because sometimes they're embarrassed and they apologize for crying. There's nothing wrong with them crying. That was the only thing that I told her about crying. I don't ever prompt a victim at a certain time in trial you should cry at this point. And that's my only communication.

The prosecutor produced her notes from the interview to the trial judge. They state, "[i]f don't understand just let me know. Must be upfront—know that you have been forthright. It is okay to cry— there will be a point when[.]" The notes could be construed as instructing M.F. that it is permissible to cry at a certain point in the proceedings. But, the notes do not provide a sufficient basis for finding prosecutorial misconduct. In *Webb v. State*, this Court stated:

> The fact that the prosecutor questioned the victim in preparation for trial, or that the prosecutor typed up the questions and the answers, does not mean that the prosecutor improperly coached the victim. Nothing in this record suggests that the victim was told how to answer the questions or told to be anything but completely honest.[9]

Similarly, in this case, the record does not indicate that M.F. was told to feign emotions at any point in the trial.

The record also does not support that the prosecutor "prodded" M.F. to cry during the trial itself. M.F. began crying after the prosecutor asked her if she had any doubt that the defendant choked and raped her. Williams has not identified any

---

6. *Id.* at 150.

7. *Id.*

8. *Id.*

9. *Webb v. State*, 931 A.2d 1007, 2006 WL 2959891, at *1 (Del. Oct. 18, 2006).

line of questioning that was improper or outside the proper scope of examination given the charges. While the direct and cross examination that occurred about M.F.'s crying was unusual, the line of questioning that led up to that emotional response does not suggest misconduct. Accordingly, we hold that the record does not reflect plain error.

### Conclusion

The judgment of the Superior Court is affirmed.