Stanley TAYLOR, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 434, 2012.

Supreme Court of Delaware.

Submitted: April 24, 2013.
Decided: May 6, 2013.

Nicole M. Walker, Esquire, Office of the Public Defender, Wilmington, Delaware, for appellant.

Josette D. Manning, Esquire, Department of Justice, Wilmington, Delaware, for appellee.

Before HOLLAND, JACOBS and RIDGELY, Justices.

HOLLAND, Justice:

The defendant-appellant, Stanley Taylor ("Taylor"), a registered sex offender, appeals from final judgments of conviction entered by the Superior Court. A grand jury indicted Taylor on eighteen counts of Unlawful Sexual Conduct Against a Child by a Sex Offender,[1] one count of Attempted Unlawful Sexual Conduct Against a Child by a Sex Offender,[2] and two counts of Endangering the Welfare of a Child.[3] The indictment was based on allegations that Taylor engaged in unlawful sexual conduct with his two minor step-grand-daughters, ("M.H." & "E.H.").[4]

A four-day jury trial was held in the Superior Court. To avoid prejudice to Taylor, the sex offender element of his crimes was redacted from the indictment and a separate bench trial was held on that element after the jury returned its verdict. The State dismissed five counts at the close of the evidence. The jury was ultimately left to consider the following charges: four counts of Rape in the First Degree,[5] four counts of Rape in the Second Degree,[6] seven counts of Sexual Exploitation of a Child,[7] one count of Continuous Sexual Abuse of a Child,[8] and one count of Endangering the Welfare of a Child.[9]

Taylor was found guilty of all of the offenses presented to the jury. Thereafter, in a bench trial, the Superior Court found that Taylor was a registered sex offender at the time of the offenses, resulting in guilty verdicts on all of the sex offender charges. Taylor was sentenced to eight life sentences, plus an additional 225 years of incarceration.

### Issues on Appeal

Taylor has raised four arguments in this direct appeal. His first contention is that the prosecutor made an improper closing argument that encouraged the jury to disregard the judge's instruction as to the manner in which it must consider an out-of-court unsworn statement, and thereby jeopardized the fairness and integrity of his trial. Second, Taylor submits that the trial judge abused his discretion and violated Taylor's right to a fair trial when, despite Taylor's request, he refused to strike allegedly irrelevant and highly prejudicial testimonial evidence by a nurse. Third, Taylor argues that the trial judge abused his discretion and denied Taylor his right to a fair trial when he allowed the jury to view, during deliberations, one of the complainant's out-of-court statements, "when her statement and her in-court testimony were originally presented to the jury four days previous and when there were significant inconsistencies within her testimony and gaps between her statement and her testimony." Finally, Taylor alleges that, even if this Court were to conclude that alleged individual errors, standing alone, do not warrant reversal, the cumulative impact of all of the errors amounts to plain error.

We have concluded that each of Taylor's first three assignments of error is without merit. Accordingly, there could be no cumulative impact amounting to plain error.

---

1. Del.Code Ann. tit. 11, § 777A.

2. Del.Code Ann. tit. 11, § 531.

3. Del.Code Ann. tit. 11, § 1102.

4. The Court has assigned pseudonyms pursuant to Supreme Court Rule 7(d).

5. Del.Code Ann. tit. 11, § 773.

6. Del.Code Ann. tit. 11, § 772.

7. Del.Code Ann. tit. 11, § 1108.

8. Del.Code Ann. tit. 11, § 776.

9. Del.Code Ann. tit. 11, § 1102.

Therefore, the judgments of the Superior Court must be affirmed.

### Facts [10]

On June 4, 2011, Taylor's two step granddaughters, M.H., eight-years-old, and E.H., twelve-years-old, made complaints to police that over the previous few years, Taylor had engaged in unlawful sexual conduct with each of them when he visited the trailer in which they lived. The complainants were taken to the Beebe Medical Center for forensic examinations.

Cheryl Littlefield, a sexual assault nurse examiner ("SANE nurse"), conducted a forensic examination of M.H. According to Littlefield, M.H. reported that she had pain in her private area. The nurse also stated that during the examination, she observed physical evidence that M.H. had been vaginally and anally penetrated multiple times.

Ashley Thompson–Hill, another SANE nurse, examined E.H. She testified that E.H. reported that "my Pop-pop touched me in my breasts and in my butt three times in the last two weeks. He was in bed with my sister last night. He took pictures of me down there with his camera." However, E.H. also stated that no one had ever penetrated her vagina or her rectum.

Thompson–Hill stated that during the examination "E.H. was very withdrawn. She was very scared to really talk or let us look at her anywhere." As a result of the examination, the nurse noted bruising around E.H.'s rectum and redness in the vaginal area. She acknowledged that these conditions could have occurred naturally.

After the forensic examinations were completed, the children were taken to the Child Advocacy Center ("CAC") to give statements. In her statement, M.H. alleged that there were occasions where Taylor: took naked photos of her, engaged in anal intercourse with her, engaged in multiple acts of fellatio with her, and engaged with her in multiple acts of vaginal penetration with his finger.

Later, at trial, M.H. only testified that Taylor stuck his finger in her "bottom" on more than one occasion. She also testified that he took a photograph of her while she was in the bathroom nude. The trial judge noted that M.H.'s testimony was "internally inconsistent" and there were gaps between her testimony and her CAC statement.

E.H. also took the stand at trial. She testified that no one ever touched her breasts or her buttocks inappropriately. Instead, she alleged: sexual abuse of M.H. by Taylor, that Taylor made both of the girls kiss him on the lips, that she got on top of Taylor with clothes on and moved up and down, that Taylor "pulled his part out" while she was in the bathroom, and that Taylor took pictures of her and M.H. nude. Because E.H. was adamant that she talked to someone at CAC about good and bad touches, but not about allegations of sexual misconduct, her CAC statement was not presented to the jury.

Based on the complaints that Taylor had taken nude photos of M.H. and E.H., police obtained a warrant and searched his home. Police seized a Fuji, Model Z5 camera, a tower to a Compaq Computer Presario, and a tower to an HP Pavilion. Detective Nancy Skubik examined the camera and the two computer towers. She identified six separate photos that contained images of a young female's vaginal area, a young female's buttocks, and a young female's genitalia with a male penis. Because the wallpaper in the background

---

**10.** The facts are taken from Taylor's opening brief.

of the photos matched that in the bathroom of the trailer where the girls lived, the State testified that the photos were of M.H. and E.H.

The State presented multiple copies of each of the six photos, because the photos had been found on the multiple devices police had seized. Skubik testified that this was evidence that the photos had been transferred from the camera to the two computer towers. According to the State, this was evidence of intent to use the photos for sexual gratification.

Taylor gave a statement to police, portions of which were played for the jury.

### Prosecutor's Closing Argument

■ Taylor alleges that the State made comments during its closing argument to the jury that deprived him of a fair trial. Taylor concedes that he did not preserve this argument at trial. Accordingly, that claim is subject to the plain error standard of appellate review.

■ In *Baker v. State*,[11] this Court set forth the proper plain error analysis when prosecutorial misconduct is alleged.[12] The first step requires this Court to "examine the record *de novo* to determine whether prosecutorial misconduct occurred."[13] If no misconduct is found, the inquiry ends.[14] If there was misconduct, this Court applies the *Wainwright*[15] standard to determine if

the misconduct prejudicially affected the defendant's substantial rights.[16]

The interview of M.H. from the Child Advocacy Center was presented to the jury after she testified pursuant to title 11, section 3507 of the Delaware Code.[17] Although M.H. testified at trial to anal penetration by Taylor, she denied certain sexual acts and said she forgot others. In her CAC interview, however, M.H. provided more detail about the abuse.

After reading section 3507 to the jury, the trial judge gave the following *Acosta*[18] instruction:

> With regard to this provision, caution must be exercised by you, as the jury, when a conflict exists between the out-of-court statements and the in-court testimony, or when a conflict exists among the out-of-court statements themselves. You, as the jury, should be particularly careful if there is no evidence to corroborate an inconsistent out-of-court statement. Nevertheless, you as the jury, may convict on such statement if you are satisfied beyond a reasonable doubt that the statement is true.

When addressing the CAC interview of M.H. during closing argument, the prosecutor argued:

> But the judge has also instructed you that her prior out-of-court statement at the Children's Advocacy Center is legitimate evidence. If you find it to be

---

11. *Baker v. State*, 906 A.2d 139 (Del.2006).

12. *Id.* at 150.

13. *Id.*

14. *Id.; Williams v. State*, 34 A.3d 1096, 1099 (Del.2011).

15. *Wainwright v. State*, 504 A.2d 1096 (Del. 1986).

16. *Baker v. State*, 906 A.2d at 150; *Small v. State*, 51 A.3d 452, 459 (Del.2012).

17. Del.Code Ann. tit. 11, § 3507 (governing the admission of voluntary, out-of-court statements of a witness as substantive evidence).

18. *Acosta v. State*, 417 A.2d 373, 377–78 (Del. 1980) (holding that in a case where a victim denied a crime was committed and the only evidence of the crime was the victim's inconsistent out-of-court statement, a cautionary instruction should be given).

credible, you can consider it, just like the testimony you heard in this court. [The judge] also cautioned you that if these out-of-court statements are contradicting to what you heard in court, you should view them with caution if they are not supported by additional evidence. Well, that's skepticism. That extreme caution isn't warranted in this case, because what [M.H.] talked about at the CAC is supported, is corroborated by additional evidence.

The prosecutor's closing argument then continued by describing the corroborating evidence presented by the State in detail: the testimony of E.H., who witnessed Taylor's abuse of M.H; the testimony of the SANE nurse who described, documented, and photographed the physical evidence of the abuse of M.H.'s body and of her injuries; and the pictures Taylor took of M.H. and E.H. when they were naked.

The State argues that the "sentiment of the prosecutor's argument was clear and consistent with the instruction: heightened scrutiny was not required . . . because the State had presented significant evidence corroborating M.H.'s out-of-court statement." We agree. The prosecutor's closing argument was properly connected to the corroborating facts that were introduced into evidence by the State in Taylor's case. Accordingly, the prosecutor's comments during closing arguments did not deprive Taylor of a fair trial.

### SANE Nurse's Testimony

The parties agreed to allow Thompson–Hill, the SANE nurse who examined E.H., to testify "out of order" due to scheduling issues. This agreement was based upon the assumption that E.H. would subsequently testify that Taylor had engaged in certain unlawful sexual activity with her. Thompson–Hill's testimony with regard to E.H. immediately followed the testimony of the nurse who examined M.H. (Littlefield).

Because Thompson–Hill was presented as an expert, the jury was permitted to hear about her training and qualifications. She then testified that E.H. told her that Taylor had touched her breasts and buttocks three times in the last two weeks and that he "took pictures of [E.H.] down there with his camera." E.H. also told her that Taylor was in bed with her sister the previous night. However, E.H. did not report that she had suffered any unlawful sexual contact by anyone. Thompson–Hill testified that she physically examined E.H. because "the parents were concerned and her sister had been touched," and because E.H. had given some indication that there had been touching of a sexual nature.

E.H. took the stand the day after Thompson–Hill testified and told the jury that no one had ever touched her breasts or her buttocks inappropriately. Instead, she alleged: sexual abuse of M.H. by Taylor, that Taylor forced both of the girls to kiss him on the lips, that she got on top of Taylor with clothes on and moved up and down, and that Taylor took pictures of her and M.H. when they were naked. Her out-of-court statement given at the Child Advocacy Center was not presented to the jury because she testified that, while she talked to someone about good and bad touches, she was never asked about sexual abuse.

Due to insufficient evidence, the State dropped the counts that alleged that Taylor had engaged in some type of unlawful activity with E.H. Immediately thereafter, Taylor requested that Thompson–Hill's testimony be struck from the record and an instruction be given to the jury to disregard that testimony:

As the Court recalls, prior to [E.H.]'s testimony, the State presented the testimony of Ashley Thompson Hill, who was

the SANE nurse that examined [E.H.]. So I think for purposes of the record, since all the charges involving [E.H.] have been dismissed, I'm going to ask the Court to strike the testimony of Ashley Thompson Hill from the record, and this Court should admonish the jury to disregard that testimony since it's not necessary.

The State opposed this request, arguing that the SANE nurse also

testified about statements that E.H. made to her, statements made for the purpose of the medical diagnosis, which include the statement that the defendant was in bed with [her] sister last night and that he took pictures of [E.H.] down there with his camera, both of which are relevant to charges that are remaining.

The following exchange then took place:

The Court: Well, I think on that it would not be appropriate to strike her testimony.

Defense Attorney: Okay.

Prosecutor: And I'm not going to talk about medical evidence as it relates to E.H.

Defense Attorney: Like I say, for the purposes of the record, I just wanted to tie up any potentially loose ends, even though it is a hearsay statement, that would come in for the history of that individual. I'm not sure whether it's admissible as evidence on the other matter, since it is a hearsay issue. It's not objectionable for the history-keeping purposes, but now that all the charges are dismissed and there are no charges involving [E.H.], I mean [E.H.]—but I've made my motion.

The Court: All right. Just on that one particular point, is there anything I can do for you, Mr. [defense attorney]?

Defense Attorney: No, I don't know of anything that can be done.

The Court: I mean if there were, I would be willing to consider and do it.

Defense Attorney: At this point, I don't know—

The record reflects that the testimony of Thompson–Hill was properly submitted to the jury even though the attempted rape charges pertaining to E.H. were dismissed by the State at the close of the evidence. Thompson–Hill's testimony was evidence of the other remaining charged conduct.

 E.H.'s statement to Thompson–Hill, regarding Taylor being in bed with M.H. the night before, is the statement of an eyewitness. That statement was evidence of charged conduct: Taylor's rape of M.H. the previous day. Similarly, E.H.'s statement to Thompson–Hill regarding Taylor taking photographs of her "down there" goes directly to the exploitation charges and is therefore relevant and probative evidence of that charged conduct.

 The only statement E.H. made to Thompson–Hill that did not directly correspond to remaining charged conduct is E.H.'s statement regarding the touching of her breasts and buttocks. That statement was made to Thompson–Hill by E.H. as part of her medical treatment of E.H. Thompson–Hill testified that when she asked E.H. what happened to her, E.H. responded: "My Pop–Pop touched me in my breasts and in my butt three times in the last two weeks. He was in bed with my sister last night. He took pictures of me down there with his camera." During the colloquy with the trial judge, Taylor's attorney acknowledged, "even though it is a hearsay statement, that would come in for the history of that individual."

Taylor's motion to strike all of Thompson–Hill's testimony was properly denied. Taylor's attorney did not ask for a limiting

instruction, even though the trial judge asked "is there anything I can do for you?" Therefore, all of E.H.'s statements to Thompson–Hill during her medical examination were properly admitted into evidence.

### Jury Request for 3507 DVD

■ At the end of trial, the judge gave the standard instructions to the jury. He then added the following:

> If you want to see and listen to [M.H.]'s statements, you will have to tell the bailiff and then I will have to make a decision as to whether or not you will get to listen to that again. It is a process we follow; why we do it is of no importance to you folks.

After a period of deliberation, the jury requested to view M.H.'s unsworn DVD statement. Explaining that both M.H.'s testimony and her statement were presented four days earlier, Taylor objected because "permitting [the jury] to see the CAC interview today would give undue influence [sic] over the comments of the CAC versus the in-court testimony." According to Taylor, the jury would have a fresher recollection of the unsworn DVD statement than it would the inconsistent sworn trial testimony. The prosecutor responded to Taylor's objection as follows: "Your Honor, the *Flonnory* case basically gives the Court discretion. I understand [defense attorney]'s concerns about, you know, putting undue emphasis on the CAC statement as opposed to the in-court testimony. The State will rely on Your Honor's decision."

The trial judge overruled Taylor's objection, reasoning that since "the jury has asked for it, and since there are many conflicts between the 3507 statements and the in-court testimony, I certainly think it is appropriate that the jury get to listen to it again."

In *Flonnory v. State*,[19] this Court set forth a "default" rule "that written or tape or video-recorded § 3507 statements should *not* be admitted into evidence as separate trial exhibits that go with the jury into the jury room during deliberations although the statements may be played or read to the jury in the first instance during the course of trial."[20] The primary reason for this rule is that "a § 3507 witness's in-court direct testimony and crossexamination testimony is also rarely, if ever, transcribed and given to the jury."[21] Thus, allowing the jury to repeatedly view the 3507 statement during deliberations "might result in the jury giving undue emphasis and credence" to that unsworn statement.[22] Nevertheless, this Court provided that:

> The trial judge does, however, have discretion to depart from this default rule when in his judgment the situation so warrants (e.g., where the jury asks to rehear a § 3507 statement during its deliberations or where the parties do not object to having the written or recorded statements go into the jury room as exhibits). The trial judge's broad discretion in these circumstances is coextensive with his discretion to allow or to refuse to allow the jury to rehear in-court trial testimony of any witness.[23]

■ A trial court's decision to provide a recorded out-of-court statement to the jury during deliberations is reviewed for

---

19. *Flonnory v. State*, 893 A.2d 507 (Del.2006).

20. *Id.* at 526–27.

21. *Id.* at 525–26 (internal citations omitted).

22. *Id.* at 526.

23. *Id.* at 527 (internal citations omitted).

an abuse of discretion.[24] It is well-settled that under normal circumstances, the recording of a section 3507 statement played during trial should not be entered into evidence as a separate trial exhibit for the jury to rehear during deliberations.[25] However, there are two exceptions to that default rule: first, when the parties agree the recording should be admitted; or second, when during deliberations, the jury requests the recording.[26]

Taylor's case fits into the second recognized exception. Even though a jury request for a recording need not be granted automatically, the record reflects that the trial judge did not abuse his discretion by allowing the recording to be replayed for the jury during deliberations.

### Conclusion

The judgments of the Superior Court are affirmed.

**24.** *Lewis v. State*, 21 A.3d 8, 13 (Del.2011).

**25.** *Flonnory v. State*, 893 A.2d at 526; *Burns v. State*, 968 A.2d 1012, 1022 (Del.2009).

**26.** *Flonnory v. State*, 893 A.2d at 527; *Lewis v. State*, 21 A.3d at 13–14.