IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| GABINO LARA, | § | |
| | § | No.   562, 2018 |
| Defendant Below, | § | |
| Appellant, | § | Court Below:   Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | ID. No. 1804014265 (S) |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted:   June 5, 2019
Decided:   July 30, 2019
Corrected:   August 20, 2019

Before **STRINE**, Chief Justice; **VALIHURA** and **VAUGHN**, Justices.

## O R D E R

On this 20th day of August 2019, upon consideration of the parties' briefs and the record on appeal, it appears that:

(1)    The appellant, Gabino Lara, appeals from a Superior Court jury verdict finding him guilty of Assault in the Third Degree.   He raises one claim on appeal. He contends that the State's rebuttal argument violated his due process right to a fair trial under the Fifth and Sixth Amendments to the U.S. Constitution.   Specifically, he contends that the State's rebuttal argument contained an improper comment that infringed on (1) his right to remain silent prior to giving his testimony at trial and

(2) his right to counsel. The Superior Court erred, he argues, in not granting his motion for a mistrial. We find no merit to his contention and affirm.

(2) On the morning of April 22, 2018, Francisco Hernandez-Cruz and his wife were walking home when four or more men, including Lara, passed them in a slowly moving vehicle and allegedly shouted insults about Hernandez-Cruz's wife. According to Hernandez-Cruz's testimony at trial, two different people in the vehicle yelled vulgar and offensive things about his wife. Lara, in his trial testimony, disputed this, saying neither he nor anyone else in the car said anything vulgar or offensive. Hernandez-Cruz then approached the vehicle. At trial, a dispute existed as to exactly what happened at that point: Hernandez-Cruz testified that Lara, using a particular Spanish dialect, told him he was "going to beat the crap out of [him],"[1] while Lara testified that he held out his hand to greet Hernandez-Cruz. It was undisputed that Hernandez-Cruz hit Lara in the face and the vehicle then sped away.

(3) Thirty minutes to an hour later, Hernandez-Cruz was in his living room when he saw the same vehicle pull up to his house with the same men. As with the first incident, exactly how it played out from this point was disputed at trial. Hernandez-Cruz testified that, as a friend of his left the house, Lara entered the house and started fighting Hernandez-Cruz in the living room. He further testified that Lara quickly pulled a knife from behind his back and tried to stab him and that he

---

[1] App. to Appellee's Answering Br. at B64.

2

was cut on the arm as he tried to defend himself. He explained that during the fight, Lara fell to the ground and he hit Lara while Lara was on the ground. Hernandez-Cruz's wife then came into the room, separated them, pushed Lara out of the house, and called the police.

(4) Lara, on the other hand, testified that he returned to Hernandez-Cruz's house after the first incident to ask Hernandez-Cruz why he hit him earlier, because they had previously been friendly and Lara had not said anything offensive. Lara testified that after he knocked on the door, Hernandez-Cruz's friend, who was also a friend of Lara's, "opened the door."[2] According to Lara, he "stopped in the door" and "asked if [Hernandez-Cruz] was there."[3] Although the friend said Hernandez-Cruz was not there, Hernandez-Cruz came into the room within a few seconds. Lara explained that he asked Hernandez-Cruz why he hit him and that Hernandez-Cruz said "I did it and I'm going to f[] you up again. And I said, no, I'm asking you why did you hit me. And that's when he came toward me and started beating me and I just tried to defend myself."[4] According to Lara, he ended up on the floor while Hernandez-Cruz continued to beat and kick him. Lara then took out a knife that

---

[2] *Id.* at B110.
[3] *Id.*
[4] *Id.* at B111.

3

was in his waistband "[b]ecause [Hernandez-Cruz] had [him] on the floor and he was hitting [him] and [Lara] couldn't get [Hernandez-Cruz] off of [himself]."[5]

(5) Later that day, Lara was arrested and charged with Assault in the First Degree, Possession of a Deadly Weapon During the Commission of a Felony, Home Invasion, Aggravated Menacing, and Disorderly Conduct.

(6) At trial, Lara's counsel gave an opening statement in which he said, among other things, that the evidence would show that Hernandez-Cruz's friend "let[] [Lara] in" the house and "[t]here [was] no forced entry."[6] During Lara's cross-examination, in response to questions as to whether the fight occurred inside or outside of the house, Lara testified that Hernandez-Cruz "pulled [him] into the house."[7] In his closing and rebuttal arguments, the prosecutor commented on the perceived inconsistency between defense counsel's statement that Lara had been "let in" the house and Lara's testimony that he had been "pulled into" the house. For example, in his rebuttal argument, the prosecutor said, "[defense counsel], when he got up in his opening in the preview, no anticipation that the defendant was going to testify that he got pulled in. First time heard that on the stand."[8] Lara objected to this statement in the State's rebuttal argument and moved for a mistrial on the ground

---

[5] *Id.* at B113.
[6] App. to Appellant's Opening Br. at A10.
[7] App. to Appellee's Answering Br. at B126. Whether the fight occurred inside or outside the house, and the circumstances of Lara's entry into the house, were questions relevant to the Home Invasion charge.
[8] App. to Appellant's Opening Br. at A39.

4

that it was an "intrusion into the attorney-client relationship and attorney-client privilege" and it violated his "Fifth Amendment and Delaware constitutional right to be free from self-incrimination privilege."[9] The trial judge overruled the objection and denied the mistrial. Ruling from the bench, the trial judge explained:

> [Defense counsel], I told you in the beginning when this came up earlier that you were going to be held, just like the prosecution is held to whatever it makes in its opening statements.
>
> This is a very important fact here. The defendant gets up there and says, well, I never left the doorway. He understands how important this is. That wasn't addressed in your opening statement. I told you before, you say what you say and you're held to it. This is fair commentary on that.
>
> [The prosecutor] mentions this in his opening. You had a chance to deal with it. You did or you didn't.
>
> I overrule the objection.[10]

(7) Ultimately, the jury convicted Lara of Assault in the Third Degree, a lesser-include offense of Assault in the First Degree, and acquitted him of all the other charges.

(8) Although Lara challenges the Superior Court's denial of his motion for a mistrial, which we review for abuse of discretion,[11] his claim alleges prosecutorial

---

[9] *Id.* at A40.
[10] *Id.* at A40-41.
[11] *MacDonald v. State*, 816 A.2d 750, 753 (Del. 2003).

misconduct. For such claims, "we essentially review for harmless error."[12] First, however, we must conduct a *de novo* review to determine whether misconduct actually occurred.[13] If no misconduct occurred, then the analysis ends.[14]

(9) Lara contends that the prosecutor's argument violated his Fifth Amendment right to remain silent prior to giving his trial testimony and his Six Amendment right to counsel. Specifically, he argues that, by "reminding the jury that the first time that they had heard the Defendant's account of what happened on the day of the incident—that he had been pulled from the doorway into [Hernandez-Cruz's] house—was when he testified at trial," the prosecutor "invit[ed] the jury to draw an adverse inference from the Defendant's pre-trial silence and the Defendant's representation by counsel prior to his testimony."[15] He continues, "The jury was left to believe that the Defendant should have disclosed this significant fact—to the police before trial or to his lawyer before his testimony[—]and that his failure to do so permitted a strong inference of guilt."[16]

(10) We find that the comment at issue does not rise to the level of prosecutorial misconduct. The State argued that Lara's testimony—that he was "pulled into" the house—was not credible given the other evidence in the case,

---

[12] *Baker v. State*, 906 A.2d 139, 148 (Del. 2006) (en banc) (internal quotation marks omitted).
[13] *Id.*
[14] *Id.*
[15] Appellant's Opening Br. at 7 (citation omitted) (citing App. to Appellant's Opening Br. at A39).
[16] *Id.*

including the fact that Lara had voluntarily gone to Hernandez-Cruz's house with a knife in his possession shortly after the first incident. Calling the jury's attention to the alleged inconsistency between defense counsel's opening statement and Lara's actual testimony as to how Lara entered the house reasonably supported that argument. As the trial judge explained in his ruling on Lara's objection, it was appropriate to hold Lara to what counsel said in his opening statement in the same way the prosecution is held to its opening statement. That is, the State was permitted to argue in its closing that the facts presented by Lara did not actually show what he said they would show in his counsel's opening statement—just as Lara would be permitted to argue that the State failed to present evidence it promised it would present in its opening (if that were the case).

(11) The prosecutor's comment, that the "[f]irst time [we] heard that [was] on the stand,"[17] was not an impermissible comment on Lara's right to remain silent prior to trial. It is clear from the context that the prosecutor was not implying guilt from Lara's exercise of his right to remain silent prior to trial. We also reject Lara's contention that the State's rebuttal argument infringed upon his right to counsel. The State's comment was fair argument based on what the jury heard from defense counsel and Lara in open court, and it did not intrude into the attorney-client relationship or attorney-client privilege in any way.

---

[17] App. to Appellant's Opening Br. at A39.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior

Court is **AFFIRMED.**

BY THE COURT:

/s/   James T. Vaughn, Jr.
Justice