**Stanley R. CZECH, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

No. 269, 2007.

Supreme Court of Delaware.

Submitted: Jan. 23, 2008.
Decided: March 17, 2008.

Bernard J. O'Donnell, Esquire, Office of the Public Defender, Wilmington, Delaware, for appellant.

Gregory E. Smith, Esquire, Department of Justice, Wilmington, Delaware, for appellee.

Before STEELE, Chief Justice, HOLLAND and BERGER, Justices.

HOLLAND, Justice.

The New Castle County Grand Jury indicted the defendant-appellant, Stanley R. Czech ("Czech") on fifteen counts of Rape in the First Degree [1] and one count of Continuous Sexual Abuse of a Child.[2] Following a five-day jury trial, the Superior Court convicted Czech of three counts of Rape in the First Degree and acquitted him on the remaining charges in the indictment. The Superior Court sentenced Czech to a total of fifty-one years of incarceration at Level V, suspended after serving forty-five years for decreasing levels of supervision.

In this direct appeal, Czech raises three contentions. Czech's first argument is that the trial judge abused her discretion by allowing the child complainant's mother to sit on the witness stand behind the child while the child testified before the jury. Second, Czech contends that the trial judge committed plain error by allowing evidence of a similar uncharged offense to be introduced into evidence. Finally, Czech submits that the prosecutor's statements during closing arguments amounted to improper vouching.

We have concluded that none of Czech's arguments have merit. Therefore, the judgments of the Superior Court must be affirmed.

### Facts [3]

Czech was charged with committing multiple offenses of rape against the five-

---

1. Del.Code Ann. tit. 11, § 773.

2. Del.Code Ann. tit. 11, § 778.

3. The facts are taken almost verbatim from the opening brief filed for Czech in this appeal.

year-old granddaughter of his girlfriend. Mary Jane Smith ("Ms.Smith") testified that Czech is her mother's boyfriend. Ms. Smith's mother, Carol Young, and Czech had lived together for about ten years in Wilmington. Ms. Smith testified that her two children,[4] Mary (five-years old) and Martha (about three-years old) would stay with her mother and Czech about one weekend every two months from January 2004 through February 2006.

Ms. Smith testified that on March 12, 2006, she saw her five-year-old daughter, Mary, on the sofa at home with her hands down her pants moving up and down. She took Mary into the kitchen and asked Mary what she was doing. Mary replied it hurts down there. She asked Mary why it hurts and Mary was unresponsive. She asked Mary if anyone had ever touched her down there and Mary said no.

She warned Mary that she shouldn't lie to her mother and asked again whether anyone had ever touched Mary down there. Ms. Smith testified Mary put her hands over her mouth and mumbled. Ms. Smith told Mary that she could not hear her and Mary mumbled again. Ms. Smith again told Mary that she couldn't hear her and Mary said "Stoshi," which is Czech's nickname. On further questioning by her mother, Mary said that it happened every day.

Ms. Smith took Mary to her doctor who referred her to A.I. DuPont Hospital for Children. The following day, Mary was examined by a pediatrician specializing in child abuse. The physical examination provided no medical indications that Mary had been molested. The doctor testified, however, that this was consistent with child sexual abuse.

Four days later, on March 17, 2006, Mary was questioned by a child abuse investigator from the Child Advocacy Center at A.I. DuPont Hospital. Her interview was recorded and played for the jury at trial. Ms. Smith testified that, after the first interview at A.I. DuPont Hospital, Mary told her that Czech had also done the same things to her cousin Ruth, who was about eleven-years-old.[5]

About two weeks later, on May 4, 2006, Mary was again interviewed at A.I. DuPont Hospital. That recorded interview concerning the reported abuse of Ruth was also played for the jury. Mary's cousin, Ruth, subsequently testified at trial. Ruth stated that she and her five-year-old brother, Anthony, had stayed at her grandmother and Czech's apartment several times, but that Czech had never touched her inappropriately, that she had never told anyone that Czech had touched her inappropriately, and that she had never seen Czech touch any of her cousins, including Mary, inappropriately.

Mary, then almost six-years-old, testified at trial. She did not respond, however, to any of the prosecutor's questions concerning the offenses alleged against Czech or her prior interviews at A.I. DuPont Hospital. The recordings of the two statements to the investigator at A.I. DuPont Hospital were then played for the jury.

Czech, who was fifty-years-old, testified that he had lived with Carol Young for about twelve years in Wilmington. He said that Ms. Smith's daughter, Mary and Martha, did not come over to their grandmother's home very often, only when Ms. Smith wanted her mother to babysit. When the children or their cousins stayed

---

4. Pseudonyms were selected for all of the individuals referred to in this opinion with the exception of the defendant. Supr. Ct. R. 7.

5. Ms. Smith also testified that a little more than three months after Mary first told her of Czech's actions, Mary drew some pictures at home on three paper plates. The paper plates were admitted into evidence.

for the weekend, the children would sleep in Carol and Czech's bedroom in the one bedroom apartment. Carol and Czech would sleep on sofas in the living room. Czech said that when Mary and her cousin, Anthony, sometimes took baths at the apartment before bedtime, he would set the water and tell them to get in the tub. Czech denied ever touching Mary or any of her cousins inappropriately.

### Child Witness Support Person

Czech's first argument on appeal is that the trial judge abused her discretion by permitting a support person (the complainant's mother) to sit behind the child complainant while she was testifying before the jury. Czech argues that special accommodation prejudiced him, heightened sympathy for the complainant, and enhanced her credibility because the jury may have perceived the mother's presence as the trial judge's endorsement of the child's testimony. Specifically, Czech asserts that the trial judge erred by: first, suggesting the special accommodation *sua sponte*; second, not requiring a foundation to be laid for the presence of the support person; and third, denying Czech's request for a special jury instruction explaining that the presence of the support person should not affect the jury's assessment of the complainant's credibility.

The question of whether it is permissible for an adult support person to sit in close proximity while a child complainant testifying before a jury is one of first impression in Delaware. Such accommodations have, however, been addressed and approved by several other jurisdictions providing that adequate procedural safeguards are imposed.[6] For example, in *State v. T.E.*, the New Jersey Court of Appeals held that "upon a showing of substantial need, with appropriate safeguards imposed, and a cautionary instruction given, a trial judge's discretion is not abused in permitting an adult support person to sit in close proximity to a young child while testifying before a jury."[7] Other jurisdictions have required similar procedural safeguards including; requiring the state to prove there was a "compelling need" to have the support person sit next to the child;[8] issuing a cautionary instruction both to the jury and to the support person,[9] or allowing the defendant to suggest alternatives to the procedure.[10] The use of such safeguards allows a trial court to strike the proper balance between the possible prejudice to the defendant's constitutional right to a fair trial and the interest of the State in presenting testimonial evidence.[11]

In Czech's case, the Superior Court made the special accommodation without

6. *State v. Menzies*, 26 Conn.App. 674, 603 A.2d 419 (1992)(finding no error where guardian ad litem sat by child while testifying because there was a preliminary evidentiary hearing showing a "compelling need" for the accommodation and a contemporaneous jury instruction was given explaining support person's presence); *State v. T.E.*, 342 N.J.Super. 14, 775 A.2d 686, 697 (App.Div.2001), *cert. denied*, 170 N.J. 86, 784 A.2d 719 (2001) (holding that "upon a showing of substantial need, with appropriate safeguards imposed, and a cautionary instruction given, a trial judge's discretion is not abused in permitting an adult support person to sit in close proximity to a young child while testifying before a jury"); and *State v. Reeves*, 337 N.C. 700, 448 S.E.2d 802 (1994) (finding no error where

child was permitted to testify from step-mother's lap where upon motion from the State trial court made findings as to the need for the special procedure and gave cautionary instruction to step-mother not to influence child's testimony).

7. *State v. T.E.*, 775 A.2d at 697.

8. *State v. Menzies*, 603 A.2d at 429.

9. *Mosby v. State*, 703 S.W.2d 714 (Tex.Ct.App. 1985).

10. *State v. T.E.*, 775 A.2d at 697.

11. *See, e.g., Boatright v. State*, 192 Ga.App. 112, 385 S.E.2d 298 (1989); *State v. Johnson*,

performing a balancing analysis and without implementing any procedural safeguards.[12] First, Czech notes that the trial judge suggested *sua sponte* that the mother be seated behind the child on the witness stand. The trial judge then advised the jury, "The testimony of Ms. Smith is complete and she is excused as a witness. However, the State has made a request that she be permitted to sit up here because her daughter is going to be called as a witness and I have granted the State's request." The record reflects, however, the State only requested that the child's mother sit in the courtroom gallery. That placement would have been consistent with a Delaware statute and far less intrusive and less likely to have an impact on the jury.[13]

■ This Court appreciates that the nature of this case and the young age of the child complainant undoubtedly motivated the judge's suggestion to place the mother behind her child on the witness stand. In the absence of extraordinary circumstances, however, a trial judge should not make special accommodations *sua sponte*. We hold that such special accommodations should only be made if it has been determined, upon motion, that the requesting party has demonstrated a "substantial need" for their implementation.

Czech's second contention is that because the trial judge suggested the procedure *sua sponte*, the appropriate foundation was not laid for the special accommodation. Czech urges this Court to follow the precedent in Hawaii which requires a showing of "a compelling necessity for allowing [this practice]."[14] We decline to adopt that standard. We have already held that a preliminary showing must be made to establish a *substantial need* for special accommodation. Although the trial judge indicated that the decision to allow the child's mother to sit behind her on the witness stand was to provide comfort for the child, the trial judge did not make any particularized findings on the record that demonstrated a "substantial need" for the special accommodation and the State did not make any such preliminary showing to that effect.

■ Third, Czech argues that because the use of this type of special procedure is fraught with potential to influence the jury, the trial judge erred by denying his request for a cautionary jury instruction. The record reflects that the trial judge summarily rejected Czech's request for a contemporaneous jury instruction. We review *de novo* the Superior Court's denial of a requested jury instruction.[15]

38 Ohio App.3d 152, 528 N.E.2d 567 (1986); and *State v. T.E.*, 342 N.J.Super. 14, 775 A.2d 686.

**12.** This Court acknowledges the Superior Court's decision to seat the child's mother behind her on the witness stand to prevent the child from taking any direction from her mother while testifying. This Court also recognizes the trial court's instruction to the mother cautioning the mother not to make eye contact with the complainant while she is testifying.

**13.** Section 3512 of Title 11 provides that, "Any victim or the victim's immediate family

shall have the right to be present during all stages of a criminal proceeding even if called upon to testify therein, unless good cause can be shown by the defendant to exclude them." Mary's mother is a person within the definition of persons permitted to remain in the courtroom throughout a trial as defined by section 3512.

**14.** *State v. Rulona*, 71 Haw. 127, 785 P.2d 615, 617 (1990), *overruled on other grounds by, State v. Mueller*, 102 Hawai'i 391, 76 P.3d 943 (2003).

**15.** *Gutierrez v. State*, 842 A.2d 650, 651 (Del. 2004).

■ The trial judge provided no explanation for denying such an instruction. Where, as here, there is an undisputed risk of prejudice to the defendant due to the use of special accommodations, a summary denial of a mitigating instruction constitutes error. A specific, contemporaneous instruction explaining the purpose of the support person and that the jury was to draw no inference from that person's presence would have mitigated concerns over the accommodation's impact on the jury.[16]

■ It is well-settled that a trial judge is responsible for management of the trial and is vested with broad discretion to perform that function. Delaware Rule of Evidence 611(a) recognizes that the trial judge has authority to determine the mode and manner of a witness's testimony. The Rule states:

> (a) Control by court. The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

This Court reviews trial management decisions for an abuse of discretion.[17] "An abuse of discretion occurs when a court has exceeded the bounds of reason in view of the circumstances, or so ignored recognized rules of law or practice so as to produce injustice."[18] The record reflects that the trial judge's discretion was not properly exercised in Czech's case.

■ Nevertheless, we have concluded, that although the use of the special accommodation in Czech's case may have been prejudicial, any prejudice was harmless. "Harmless errors are those that do not constitute significant prejudice to the adversely affected party that would operate to deny that party a fair trial."[19] A review of the child complainant's trial testimony shows it had little probative value. Even with her mother seated behind her, Mary's in-court testimony shed little light on the prosecution's case against Czech.

The child's answers were generally one word responses that, at times, were contradictory and did not implicate the defendant. The record reflects that Mary was ill when she testified and threw up during the luncheon recess. In fact, the prosecution presented the substance of its case again through the CAC interviews that were shown to the jury after Mary finished testifying, but before she was formally excused as a witness.[20] Because the child complainant's trial testimony did little, if anything, to advance the State's case, we find that the judge's special accommodations were harmless beyond a reasonable doubt.[21]

16. *Black v. State*, 616 A.2d 320, 324 (Del. 1992).

17. *Riley v. State*, 496 A.2d 997 (Del.1985).

18. *Lilly v. State*, 649 A.2d 1055, 1059 (Del. 1994).

19. *Mills v. State*, —— A.2d ——, 2007 WL 4245464 (Del. Dec.3, 2007).

20. Presenting evidence of the rape under 11 *Del. C.* § 3507 through the CAC interviews comports with the defendant's constitutional right to confrontation because Mary's testimony "touched on the events" concerning the offense and because the defendant had the opportunity to cross-examine her. *See Feleke v. State*, 620 A.2d 222, 227–228 (Del.1993)(holding that the foundational requirements of 11 *Del. C.* § 3507 are met if the witness's testimony at least touches on the events perceived and such presentation under § 3507 is constitutional so long as the out-of-court declarant is subject to cross-examination).

21. *Van Arsdall v. State*, 524 A.2d 3, 11 (Del. 1987).

This Court recognizes that sensitive issues may arise during a trial where young children will be subject to the extraordinary pressures of testifying. The Delaware's General Assembly has also stated its view that child witnesses should be treated with "additional consideration" when involved in Superior Court criminal proceedings. Del.Code Ann. tit. 11, § 5131 states:

> The General Assembly finds that it is necessary to provide child victims and witnesses with additional consideration and different treatment that that usually required for adults. It is therefore the intent of the General Assembly to provide each child who is involved in a criminal proceeding within the Superior Court with certain fundamental rights and protections.

Accordingly, the propriety of allowing a support person to accompany some child witnesses while they testify is not in question.

 When ruling upon a request for special accommodations in the future, however, the New Jersey decision in State v. T.E. is particularly instructive on the issue because it thoroughly considered the competing interests of the State, the defendant and the child witness.[22] We cite with approval the following six factors that the New Jersey court outlined to guide the trial judge's exercise of discretion in acting upon motions for special accommodations:

(1) A preliminary showing must be made to establish a substantial need for the procedure. It must be demonstrated that without accompaniment, the child is likely to be substantially non-responsive, and that with accompaniment, the child is likely to provide meaningful, probative testimony. The court may consider the age of the witness, the nature of the testimony, evidence of fear, embarrassment or inability to testify, and the degree of trauma experienced by the witness in the underlying event and by the courtroom experience.

(2) A defendant should be given the opportunity to suggest alternatives. [Examples Deleted].

(3) Choice of the support person should minimize potential prejudice. A parent or other close relative will more likely be viewed as family support than vouching for the witness' credibility, as might result with a counselor, therapist or other professional. The advisability of identifying the status of a non-family support person should be considered. Whether the support person is also a witness in the trial should be considered; for example this might impact a sequestration order, and, depending upon the scope and extent of the support person's testimony it might tend to unduly bolster the child's testimony. A representative of the prosecutor's office should not be used.

(4) The logistics should be only as intrusive as necessary to accomplish the purpose of the procedure. Placing the support person in the front row of the gallery or at counsel table, for example, would be minimally intrusive. Permitting the support person to stand behind or sit alongside the witness is moderately intrusive. Contact, such as holding the child's hand or permitting the child to sit on the support person's lap is highly intrusive and should be considered only as a last resort. The view of the child by the defendant and the jury should not be obstructed.

(5) A cautionary instruction should be given to the support person not to

---

22. See e.g., Boatright v. State, 192 Ga.App. 112, 385 S.E.2d 298 (1989); State v. Johnson, 38 Ohio App.3d 152, 528 N.E.2d 567 (1986); and State v. T.E., 342 N.J.Super. 14, 775 A.2d 686 (App.Div.2001), cert. denied, 170 N.J. 86, 784 A.2d 719 (2001).

speak, prompt, communicate by signals or expression, and to give no indication of approval or disapproval of the answers.

(6) An appropriate instruction should advise the jurors that the purpose of the support person is to attempt to place the child at ease while testifying and that the presence of the support person should not affect their assessment of the credibility of the child's testimony. The standard "passion, prejudice or sympathy" charge should also be given.[23]

### Trial Strategy Not Plain Error

 Czech's second argument on appeal is that the trial judge committed reversible error by admitting statements made by Mary during her taped interviews that Czech not only sexually abused her, but that he also molested her pre-teen cousin. Czech acknowledges that he did not object to the admission of that evidence, but requests that this Court review the issue for plain error. Failure to raise a contemporaneous objection to allegedly prejudicial testimony constitutes a waiver of that issue on appeal, unless the error is plain.[24] Counsel's failure to object to the admission of improper evidence does not bar plain error review unless the party consciously refrains from objecting as a tactical matter, in which case the issue is waived and not reviewable.[25]

The State's case turned on the credibility of the complaining child witness. During opening statements, Czech's attorney advised the jury that the defense would demonstrate that Mary was not credible:

She says that it happens to [Ruth], who the judge read in the witness list, and she says that [Ruth] was assaulted sexually-those are not her words but you can watch the tape-in the shower and that she saw it happen and her cousin [Anthony] saw it happen. And you will also hear [Ruth] say that no such thing happened like that.

During trial, Czech called [Ruth] as a witness and she denied having been sexually assaulted. Finally, during closing arguments, Czech's attorney made the claim of abuse against Ruth an important part of an attempting to discredit Mary, the complaining witness:

But in this case, [Mary] stated that [Anthony] saw this happen. [Mary] said that [Ruth] was raped, too. Mary said that [Ruth] was raped and "not only did I see it, but [Anthony] saw it also." Mary said that after she was raped, "we went and got my grandmother and said put salt and pepper in his mouth." The only person's who's claiming there are eyewitnesses here is [Mary]. [Ruth] is not in agreement with that. You saw-we agreed, as I stated previously, that [Anthony] stated it didn't happen.... You heard [Mary] say this happened a hundred times between Stanley Czech and Ruth[ ]. And you heard [Ruth] testify, an 11–year old girl who came into this courtroom. And her mother had already told you that she did not tell her daughter anything about the charges pending against Mr. Czech. She hadn't been told. She went to a birthday party earlier in the week where Mr. Czech turned 50 years old. She came into this courtroom and she had no clue why she was here.

The record reflects that Czech's trial strategy was to use the allegations of abuse regarding Mary's cousin, Ruth, to undermine the credibility of the complaining witness and the prosecution's overall case.

23. State v. T.E., 775 A.2d at 697–698.

24. See Wainwright v. State, 504 A.2d 1096, 1100 (Del.1986).

25. See Tucker v. State, 564 A.2d 1110, 1118 (Del.1989).

As such, Czech has waived any possible error in the admission of Mary's statement that Czech had abused Ruth.[26]

### State's Closing Not Plain Error

Czech contends that two statements by the prosecutor during closing arguments constituted an "egregious instance of prosecutorial vouching." The first was: "Five-year olds just don't make that stuff up. They have to learn it from somewhere." The second statement that Czech challenges for the first time on appeal is: "Does a five-year old exaggerate? Absolutely. We all know that. Do they exaggerate about being raped? No. Salt and pepper in the mouth? Perhaps. Being raped? No. They don't exaggerate about that."

In this appeal, Czech acknowledges that he made no objection to either of these statements that the prosecutor made in closing argument. This Court has consistently held that defense counsel bears the responsibility of posing timely objections to alleged prosecutorial misconduct.[27] Czech's failure to object to the two statements challenged in this appeal, is particularly significant in view of the three objections that defense counsel raised at other points during the prosecutor's closing argument.[28]

The appropriate standard of review when a court reviews statements made by the prosecution during closing arguments without an objection from the

defense is plain error.[29] As we held in *Baker v. State:*

The first step in the plain error review of prosecutorial misconduct mirrors that in the review for harmless error: we examine the record *de novo* to determine whether prosecutorial misconduct occurred. If we determine that no misconduct occurred, our analysis ends. If, however, the trial prosecutor did engage in misconduct we move to the second step in the plain error analysis by applying the familiar *Wainwright* standard. Under that standard, the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the *trial* process. Furthermore, the doctrine of plain error is limited to material defects which are apparent on the face of the record, which are basic, serious, and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice.[30]

Although the appropriate standard of review for this issue is plain error, the State submits that the prosecutor's above-quoted statements do not amount to improper vouching under any level of review. "Improper vouching by a prosecutor for the credibility of a witness implied that the prosecutor has superior knowledge that the witness has testified truthfully 'beyond that logically inferred from the evidence.'"[31] The State notes that in

---

26. *See, e.g., Crawley v. State,* 2007 WL 1491448, \*3 (Del. May 23, 2007) ("It is clear from the record that defense counsel made a tactical decision to use the drug related evidence thinking that it would be to his client's advantage. Because Crawley's defense counsel failed to object to drug related evidence as a conscious tactical choice, that decision waived plain error review.").

27. *See Trump v. State,* 753 A.2d 963, 970 (Del.2000).

28. Czech has not challenged any of the three remarks by the prosecutor to which he did in fact object.

29. *Baker v. State,* 906 A.2d 139, 150 (Del. 2006).

30. *Id.* (citations omitted).

31. *Trump v. State,* 753 A.2d at 966 (quoting *Miller v. State,* 2000 WL 313484, at \*4 (Del. Feb.16, 2000)).

the statements challenged by Czech on appeal, the prosecutor did not use the word "I," did not call the defendant a "liar," state the prosecutor's personal belief that the defendant was "guilty," or assert that the prosecution's witness was "truthful."[32] The State also asserts the statement did not imply that the prosecutor had superior knowledge that the witness had testified truthfully.

 The prosecutor's statement that "five-year olds don't make that stuff up" was preceded immediately by a reference to the testimony of Mary's mother that she saw Mary with her hands in her pants. The prosecutor argued "it is simply common sense that a five-year old who has not been molested would not, on her own initiative, lie on her belly, put her hands down her pants, and rock her hips up and down." Thus, the challenged statement was directly tied to the evidence and suggested a logical and proper inference from that evidence.[33]

The second statement which Czech challenges must also be viewed in context. Prior to making the argument about five-year olds sometimes exaggerating, the prosecutor reminded the jury of the testimony of a doctor who examined Mary. Even though the physician did not observe evidence of physical injury, he nonetheless concluded that the absence of physical injury was still consistent with the sexual abuse described by Mary.

After making that connection to the medical evidence, the prosecutor argued to the jury that while "we all know" five-year olds may exaggerate, rape is not a subject about which they would generally have any familiarity. In so doing, the prosecutor did not imply a superior personal knowledge, but rather was asking the jurors to draw on their collective life experience

when evaluating the general sexual knowledge of a very young child. Thus, the prosecutor's second statement did not amount to improper vouching for the credibility of Mary. Accordingly, we hold that Czech has failed to carry his initial burden of demonstrating that either of the challenged statements by the prosecutor constituted error.

### Conclusion

The judgments of the Superior Court are affirmed.

---

**32.** *See Trump v. State,* 753 A.2d at 967.

**33.** *See Kurzmann v. State,* 903 A.2d 702, 712–13 (Del.2006).