IN THE SUPREME COURT OF THE STATE OF DELAWARE

RHANDY MASSEY, § 
§ 
Defendant Below, § No. 131, 2023
Appellant, § 
§ Court Below: Superior Court
v. § of the State of Delaware
§ 
STATE OF DELAWARE, § Cr. ID No. 2108001587A (S)
§ 
Appellee. § 

Submitted: June 11, 2025
Decided: September 4, 2025

Before **SEITZ**, Chief Justice; **VALIHURA**, **TRAYNOR**, **LEGROW**, and **GRIFFITHS**, Justices; constituting the Court *en Banc*.

Upon appeal from the Superior Court of the State of Delaware. **AFFIRMED**.

John R. Garey, Esquire, JOHN R. GAREY, PA, Dover, Delaware *for Appellant Rhandy Massey*.

Carolyn S. Hake, Esquire, DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware for *Appellee State of Delaware*.

**SEITZ**, Chief Justice:

A Superior Court jury convicted Rhandy Massey of crimes relating to the sexual abuse of his two daughters. The court sentenced him to 119 years in prison. Massey appealed his convictions and raised a host of issues. At the State's request, we remanded the case to the Superior Court to supplement the record and make additional findings relating to the admissibility of evidence under the Rape Shield Statute.

The Superior Court held a hearing, confirmed its prior decision to bar certain evidence to attack the daughters' credibility, and returned the case to us. The issues on appeal have been reduced to two: whether the Superior Court applied an incorrect legal standard when it ruled that Massey could not use at trial his children's prior sexual abuse allegations against their cousin and half-brother; and second, whether the Superior Court exceeded its discretion when it allowed one daughter to hold a stuffed animal to comfort her while testifying. After careful consideration, we affirm the Superior Court's convictions.

I.

A.

Massey's two daughters, M.M. and L.M.,[1] told their mother that Massey sexually abused them. She reported their statements to the police. After an investigation, the State charged Massey with multiple crimes.[2] On the eve of trial, Massey filed a motion under Delaware's Rape Shield Statute.[3] He sought an *in camera* hearing for permission to use at trial evidence of his children's "prior sexual conduct for purposes of attacking their credibility"[4] and to "show how knowledge of sexual activity at such a tender age could have been procured."[5]

---

[1] Because minors are involved, we use initials for identification. *See Wheeler v. State,* 135 A.3d 282, 285 n.2 (Del. 2016) (assigning pseudonyms for the complaining child witnesses because they were juveniles at the time they were subject to abuse).

[2] App. to Appellant's Second Am. Opening Br. at A1 [hereinafter A__] (Crim. Docket); A12–17 (Indictment, Oct. 11, 2021). For M.M., who was 7 years old at the time, Massey was charged with two counts of Rape in the First Degree (victim under 12); Rape in the Second Degree (victim under 12); two counts of Sexual Abuse of a Child by Person in Position of Trust, Authority or Supervision in the Second Degree; two counts of Unlawful Sexual Contact in the First Degree (victim under 13); Sexual Solicitation of a Child; and Continuous Sexual Abuse of a Child. A12–14. For L.M., who was 8 years old, Massey was charged with two counts of Unlawful Sexual Contact in the First Degree (victim under 13); Rape in the Second Degree (victim under 12); Sexual Abuse of a Child by Person in Position of Trust, Authority or Supervision in the Second Degree; Endangering the Welfare of a Child; Sexual Solicitation of a Child; and Continuous Sexual Abuse of a Child. A14–16. The child endangerment charge was later severed from the other charges. A7, D.I. 61–62.

[3] 11 *Del. C.* § 3508; A18–34 (Mot. *In Camera* Interview under § 3508, Jan. 20, 2023).

[4] A19. *See generally* A18–25.

[5] A19.

According to Massey, his daughters made prior sexual abuse allegations stemming from separate incidents involving their half-brother, N.M., and Massey.[6] Specifically, in 2017, L.M. accused N.M. of touching her groin area and making M.M. perform a sexual act with him.[7] In 2018, M.M. accused Massey of touching her groin area over her clothing.[8] The State investigated both complaints but did not file criminal charges.

Massey also relied on another supposed incident when "the alleged victims engaged in sexual conduct with one another."[9] Massey wanted to admit a 2017 police report where a babysitter stated that the daughters "were doing inappropriate things," and "that it seemed like they knew too much for their age."[10] He argued that the alleged sexual conduct between the daughters was "similar in nature to the act or acts which Defendant Massey is accused of perpetrating" and might have led them to lie about Massey's abuse.[11] He also sought to introduce the police report as evidence of the daughters' knowledge of sex.

---

[6] A22–23.

[7] A22; A27.

[8] A23.

[9] A20.

[10] A24.

[11] A21.

4

During argument on the motion, defense counsel withdrew the request to admit evidence of "allegations about the children and anything they may have done with each other."[12] Defense counsel also withdrew the request to admit prior allegations against Massey.[13] That left the 2017 sexual abuse allegations by L.M. against her half-brother, N.M., and the babysitter's statement that the children "acted inappropriately."[14]

Without holding an evidentiary hearing, the Court denied the motion. It found that the babysitter's comment in the police report about the daughters' knowledge of sex was nonspecific and therefore did not "prove[] much of anything."[15] With respect to the allegations against the half-brother, N.M., the court held:

> THE COURT: All right. I'm going to deny your request to delve into this information as well, [counsel]. It's a much closer question with regard to the half brother but when I look at the standards set forth for me by Judge Barron in *Bailey*, I just don't think you have sufficient evidence that this was false and I think you have to have that because,

[12] App. to State's Answering Br. to Appellant's Second Am. Opening Br. and Appellant's Suppl. Opening Br. at B19 [hereinafter B__] (Mot. Tr. 6:5–6, Jan. 23, 2023).

[13] B30–31 (Mot. Tr. 17:19–18:10) ("The court: Are you abandoning your claim to bring into evidence the allegations against your client? . . . Once again, they were really nonspecific. . . . [Defendant's Counsel]: Right. I think that . . . the allegation against the father, was something that was blown out of proportion and I'm not sure that I can ascribe -- put any mal intent or fabrication to that."). Although defense counsel agreed not to pursue the earlier allegations against Massey, the court also ruled that the evidence was irrelevant and could not be pursued. B31 (Mot. Tr. 18:11–20). *See* B32 (Mot. Tr. 19:17–22) ("The court: Right. Okay. Well, as I said, I'm not going to allow any evidence with regard to the prior allegations with regard to the defendant. I don't think they're relevant."). Massey has not pursued the argument on appeal.

[14] *See* B19 (Mot. Tr. 6:9–19).

[15] B24 (Mot. Tr. 11:7–8).

as Judge Barron indicates, I don't think this really is a Rape Shield question, it's kind of related to it but not exactly it, but it's a question of whether that kind of questioning should be allowed and I think that there's a level that you have to have to be able to allow this kind of evidence that you don't have here.

Judge Barron uses the clear and convincing standard and I don't think you've met that standard, I'm not sure you've met any standard, and I think we would end up trying the case against the half brother if we would allow this to come into evidence. So I'm not going -- I'm going to deny your motion with respect to all of the allegations you've alleged in this particular motion.[16]

## B.

The children testified at trial about the sexual abuse by their father. One daughter testified with a stuffed animal in her hands to comfort her. Massey testified that he did not have any sexual contact with his daughters.[17] At the close of evidence, the court granted a defense motion to acquit Massey of one count of Rape First Degree regarding M.M.[18] The jury found Massey guilty of most of the remaining charges.[19]

---

[16] B39–40 (Mot. Tr. 26:16–27:13); *see State v. Bailey*, 1996 WL 587721, at *5–7 (Del. Super. Ct. Sept. 12, 1996).

[17] *See* A121 (Trial Tr. of Direct Test. of Rhandy Massey C-142:2–11, Jan. 26, 2023).

[18] B182 (Mot. for Acquittal C-88:2–10, Jan. 26, 2023).

[19] B264–69 (Trial Tr., Verdict, D-96:3–101:13, Jan. 27, 2023). The jury convicted Massey of all indicted charges except the second-degree rape charge for L.M. The jury found Massey guilty of the lesser-included charge of first-degree unlawful sexual contact. *See* B266 (Trial Tr., Verdict, D-98:12–18, Jan. 27, 2023).

Before sentencing, Massey moved for a new trial. He claimed that the Superior Court used an incorrect legal standard to deny his request to admit evidence directed to his daughters' credibility. Massey also contended that the court failed to find a substantial need before allowing one of the daughters to take a stuffed animal to the stand to comfort her.

The court denied the motion.[20] It explained that the court properly relied on *State v. Bailey*,[21] where the Superior Court found that prior allegations of sexual abuse are admissible only if the defendant demonstrates by clear and convincing evidence that the complaining witness's prior allegations were false. According to the court, Massey had not shown a proper purpose for using evidence of prior sexual abuse allegations without demonstrating that the allegations were false. The court also found that Massey wanted to make inconsistent claims – the complaining witnesses were lying about N.M. but also were abused by N.M.[22] After denying the

---

[20] *State v. Massey*, 2023 WL 2384784, at *1–2 (Del. Super. Ct. Mar. 7, 2023) [hereinafter *New Trial Op.*].

[21] 1996 WL 587721.

[22] *New Trial Op.* at *2 ("Defendant wanted to make the contradictory arguments that the alleged victims were lying about N.M., but that they were previously abused by N.M."). At the motion hearing on January 23, 2023, defense counsel argued that "if [the incident with N.M.] did not happen, then it's a fabrication. If it did happen and the State elected not to prosecute, then it becomes an issue of was there -- is there confabulation here where the alleged victims are taking a prior incident that's occurred to them and putting it into my client." B28–29 (Mot. Tr. 15:22–16:4); *see also* B33 (Mot. Tr. 20:14–18) (State's Counsel: "[T]he Defense seems to want to have it both ways; on the one hand, the girls are lying about [N.M.] but, on the other hand, they were previously abused by [N.M] and that's how they know about this sexual behavior and that's why they're lying.").

motion, the court sentenced Massey to 119 years in Level V custody, followed by decreasing levels of supervision.[23]

C.

When Massey first filed the appeal, he argued that the State violated *Brady v. Maryland* by failing to disclose a police report to the defense.[24] Specifically, during an interview for his presentence report, Massey stated that one daughter had previously accused her cousin of sexual abuse in 2015. After Massey received and reviewed the presentence report, he discovered a police report about the 2015 incident. Massey claimed that the State's failure to provide him the police report before trial prevented him from arguing at trial that the incident made one daughter knowledgeable about sex. This, he claimed, made it more likely that she had falsely accused him.[25]

The State requested that our Court stay the appeal and remand the case to the Superior Court for an *in camera* evidentiary hearing. Although the State contested Massey's *Brady* claim and his argument that the children's allegations were false, it asserted that a remand would be "appropriate to supplement the record" with an

---

[23] B270–79 (Sentence Order, Mar. 27, 2023).

[24] 373 U.S. 83, 87 (1963) ("[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.").

[25] *See State v. Massey*, 2024 WL 3443572, at *2 (Del. Super. Ct. July 17, 2024) [hereinafter *Evidentiary Op.*].

evidentiary hearing.[26] It also stated that a remand would allow the Superior Court to reconsider Massey's Rape Shield Statute motion after developing the evidentiary record. We granted the motion to remand and retained jurisdiction.

D.

At the evidentiary hearing, the parties stipulated that the court should only address two incidents – the newly discovered 2015 allegation about L.M. and M.M.'s cousin and the 2017 allegation about their half-brother N.M. that was excluded before trial.[27] The court heard testimony from L.M., M.M., and their mother. The State also introduced L.M.'s and M.M.'s 2015 and 2017 Children's Advocacy Center ("CAC") interviews.

For the 2015 incident involving the cousin, the mother testified that L.M. and M.M. were staying overnight at their aunt's house.[28] At the time, L.M. was about three years old and M.M. was about one year old.[29] Their cousin A.M. was eleven years old.[30] The mother recalled that she was at work when the children's babysitter

---

[26] State's Motion to Remand and to Stay Briefing at 5, *Massey v. State*, No. 131, 2023 (Del. Nov. 7, 2023), Docket No. 43.

[27] *See* B307 (Evid. Hr'g Tr. 16:5–22, Feb. 21, 2024); *Evidentiary Op.* at *5 ("There were originally five such incidents raised, but this number was reduced to two as the case proceeded").

[28] B353 (Evid. Hr'g Tr. 62:2–20).

[29] B349 (Evid. Hr'g Tr. 58:7–21); B350 (Evid. Hr'g Tr. 59:13–19).

[30] A135 (Presentence Report).

asked her to call.[31] The babysitter reported that N.M. had told someone that he saw A.M. in a room with L.M.[32] N.M. claimed that A.M. had pulled down L.M.'s diaper or pullup to her feet while his own pants were pulled down, and sexually assaulted her.[33] The mother immediately left work and called Massey.[34] She picked up the girls and took them to the hospital.[35] L.M. testified that she did not recall anything that happened with A.M.[36] In L.M.'s CAC interview in 2015, however, she stated that A.M. touched her inappropriately.[37]

For the 2017 incident involving N.M., the half-brother, the witnesses "generally verified" the facts reviewed by the court during the pretrial motions hearing.[38] The mother testified that she was at work when Massey called.[39] Massey said that L.M. told him that N.M. had "touched her private parts" and had M.M.

---

[31] B352 (Evid. Hr'g Tr. 61:1–3).

[32] B352 (Evid. Hr'g Tr. 61:3–7).

[33] B352 (Evid. Hr'g Tr. 61:7–9); B380 (Evid. Hr'g Tr. 89:13–16).

[34] B354 (Evid. Hr'g Tr. 63:5–15).

[35] B355 (Evid. Hr'g Tr. 64:14–23).

[36] B317 (Evid. Hr'g Tr. 26:23–27:2).

[37] B289 (L.M.'s CAC Interview, 9:29:48 AM, Aug. 28, 2015) (L.M.: "[A.M.] touched." Interviewer: "[A.M.] touched? Where did A.M. touch?" L.M.: "Right here." (pointed to her genital area)).

[38] *Evidentiary Op.* at *6.

[39] *See* B360 (Evid. Hr'g Tr. 69:1–8).

"suck his private part."[40] The mother immediately left work and took her daughters to the hospital.[41] She also recalled banning N.M. from the house after this incident.[42]

M.M. testified that she could not recall the incident with N.M. or any other memories at that age.[43] L.M. testified that she remembered going to the hospital to see if N.M. did anything wrong but could not recall whether anything happened.[44] She stated that her mother did not want her and her sister to see N.M. after that but she did not know why.[45] L.M.'s CAC interview in 2017 also stated that N.M. touched her inappropriately.[46]

In a July 17, 2024 opinion, the Superior Court found that Massey suffered no prejudice by the alleged *Brady* violation and denied relief.[47] The court also held that *State v. Bailey* set the proper standard for admitting sexual-conduct evidence under the Rape Shield Statute.[48] As the court explained, in *Bailey*, the Superior Court

---

[40] B359 (Evid. Hr'g Tr. 68:2–11, 18–20).

[41] B361 (Evid. Hr'g Tr. 70:8–9).

[42] B376 (Evid. Hr'g Tr. 85:1–4).

[43] B345 (Evid. Hr'g Tr. 54:6–13).

[44] B324–25 (Evid. Hr'g Tr. 33:10–23–34:1–3; *see also* B331 (Evid. Hr'g Tr. 40:5–19); B335 (Evid. Hr'g Tr. 44:9–16).

[45] B320 (Evid. Hr'g Tr. 29:11–18).

[46] B290 (L.M.'s CAC Interview, 2:07:35 PM, Aug. 24, 2017).

[47] *Evidentiary Op.* at *3–4.

[48] *Id.* at *7; *see Bailey*, 1996 WL 587721, at *6–7.

found that prior sexual abuse allegations are admissible only if the defendant shows by clear and convincing evidence that the prior allegations were false.[49] Applying the *Bailey* standard to the hearing evidence, the court found that Massey "failed to meet this threshold requirement."[50]

The court also found that Massey "has not even presented a minimal showing that the prior allegations" were false.[51] The court noted that the children had not recanted their allegations against A.M. or N.M.[52] L.M. and M.M. both named N.M. and maintained that "something had occurred" with him in their forensic CAC interviews.[53] Also, none of the police reports covering the incidents suggested that L.M. or M.M. lied.[54] Because Massey failed to demonstrate any indicia of falsity, the court found that Massey's arguments were only "self-serving assertions" that failed to meet "any standard" for admission.[55] The court held that, under the Rape Shield Statute, L.M.'s and M.M.'s allegations were not probative of their character

---

[49] *Bailey*, 1996 WL 587721, at *7.

[50] *Evidentiary Op.* at *7.

[51] *Id.*

[52] *Id.*

[53] *Id.*

[54] *Id.* at *8.

[55] *Id.* at *7–8.

for truthfulness and therefore inadmissible. After denying Massey's Rape Shield Motion again, the court returned the case to our Court.

E.

After the Superior Court's evidentiary hearing decision, we requested supplemental briefing to address the remaining issues on appeal.[56] In his supplemental submission and at oral argument, Massey limited his remaining arguments on appeal to two: first, whether the Superior Court erred as a matter of law by applying *Bailey* to bar the defendant's use at trial of the daughters' prior sexual abuse allegations; and second, whether the court improperly allowed M.M. to testify while holding a stuffed animal to comfort her.[57] The Court reviews *de novo*

---

[56] Massey argued in his first opening brief that the Superior Court erred by denying his motion for an *in camera* hearing to explore the truth of the daughters' prior allegations of sexual abuse against their half-brother and Massey; excluding evidence of past sexual incidents to show that the daughters had prior sexual knowledge; allowing M.M. to hold a stuffed animal while testifying; and excluding evidence of the daughters' prior sexual knowledge and thus denying Massey the opportunity to present a complete defense. He also argued that the State violated *Brady* by failing to disclose the police report about a 2015 sexual abuse incident.

[57] *See* Oral Argument at 16:02, *Massey v. State*, No. 131, 2023 (Del. June 11, 2025) [hereinafter Oral Argument], https://vimeo.com/1090572209?fl=pl&fe=vl (The Court: "So we do not need to address your *Brady* argument, correct?" Defendant's Counsel: "Yes."); B421–22 (Evid. Hr'g Tr. 14:14–15:5, July 2, 2024) ("The court: Well, are you arguing both prongs now as some reason for relief, or are you abandoning this general sexualization argument? . . . [Defendant's Counsel]: I don't believe the evidence is present in the hearing that I can continue with what you've termed sexualization."); *see also Dillard v. State*, 2025 WL 1794375, at *3 (Del. 2025) (TABLE) ("Unlike forfeited arguments that may be reviewed for plain error, waived arguments are not subject to appellate review. . . . A party's affirmative statements are a 'stronger demonstration of waiver than mere absence of an objection.'" (citation modified) (quoting *Burrell v. State*, 332 A.3d 412, 430 (Del. 2024))).

whether the trial court erred in applying the correct legal standard.[58]  We also review

whether the court exceeded its discretion in its evidentiary rulings or when managing

Massey's trial by allowing the daughter to hold a stuffed animal while testifying.[59]

## II.

## A.

The United States Constitution's Confrontation Clause guarantees a criminal

defendant "the right to confront the witnesses against him."[60]  The "principal

purpose" of the confrontation guarantee is to ensure that the defendant has "the

opportunity to cross-examine the witnesses against him."[61]  The cross-examination

right "is not absolute, however, but subject to reasonable limits where it conflicts

---

[58] *Doe v. Cahill*, 884 A.2d 451, 455 (Del. 2005) ("A claim that a trial court applied an incorrect legal standard raises a question of law that we review *de novo*." (citing *Epstein v. Matsushita Elec. Indus. Co. (In re MCA, Inc. S'holder Litig.)*, 785 A.2d 625, 638 (Del. 2001))).

[59] *Seward v. State*, 723 A.2d 365, 372 (Del. 1999) ("This Court reviews evidentiary rulings for abuse of discretion." (citing *Weber v. State*, 547 A.2d 948, 955 (Del. 1988))); *Czech v. State*, 945 A.2d 1088, 1095 (Del. 2008) ("This Court reviews trial management decisions for an abuse of discretion." (citing *Riley v. State*, 496 A.2d 997, 1006 (Del. 1985))).

[60] *Smith v. Arizona*, 602 U.S. 779, 783 (2024); *see* U.S. Const. amend. VI. ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . .").  States are required to guarantee the confrontation right by operation of the Fourteenth Amendment.  *See Pointer v. Texas*, 380 U.S. 400, 403 (1965).

[61] *Wright v. State*, 513 A.2d 1310, 1314 (Del. 1986) (citing *Davis v. Alaska,* 415 U.S. 308, 315–16 (1974)).

14

with other trial considerations."[62] One consideration is to "protect witnesses from harassment or undue embarrassment."[63]

Delaware's Rape Shield Statute balances these competing concerns. The Rape Shield Statute was designed "to protect [the complainant] from unnecessary humiliation and embarrassment."[64] Historically, defense counsel was allowed to cross-examine a witness during trial about the witness's prior sexual conduct based on antiquated notions of promiscuity and its relation to truthfulness.[65] After the Rape Shield Statute became the law in Delaware, the trial court now had to determine the relevance of a witness's sexual conduct before trial.[66] The court's evidentiary analysis is the same, but the timing of the evidentiary inquiry – an *in camera* hearing

---

[62] *Wright*, 513 A.2d at 1314.

[63] D.R.E. 611(a)(3); *see State v. Benson*, 2019 WL 1014792, at *2 (Del. Super. Ct. Feb. 28, 2019) ("Section 3508 expressly permits the Court to limit the scope of the evidence offered to only that which is necessary to attack the complaining witness's credibility, and the rules of evidence also give the Court discretion to limit evidence to avoid wasting time and to protect witnesses from harassment or undue embarrassment." (citing D.R.E. 611(a)(2)–(3))).

[64] *Scott v. State*, 642 A.2d 767, 771 (Del. 1994) (citing *Wright*, 513 A.2d at 1314).

[65] *See* Brett Erin Applegate, Comment, *Prior (False?) Accusations: Reforming Rape Shields to Reflect the Dynamics of Sexual Assault*, 17 Lewis & Clark L. Rev. 899, 911 (2013) [hereinafter Applegate, *Reforming Rape Shields*] ("Prior to the passage of rape shield statutes, a sexual assault victim could expect extensive questioning about her sexual history during trial."); Kim Steinmetz, State v. Oliver: *Children with a Past; The Admissibility of the Victim's Prior Sexual Experience in Child Molestation Cases*, 31 Ariz. L. Rev. 677, 680–81 (1989) ("[I]t was commonly thought that evidence of the complainant's prior 'unchaste character' was relevant . . . to impeach the credibility of the witness." (citations omitted)).

[66] *See Wright*, 513 A.2d at 1314 ("Evidence of the prior sexual conduct of an alleged rape victim is admissible only when the statutory procedure is followed and the court determines that the evidence proposed . . . is relevant.").

outside the jury's presence – was different.[67]  The General Assembly intended the statutory hearing requirement to provide "a meaningful opportunity to present a defense based on the complainant's credibility while protecting the complainant from unnecessary humiliation and embarrassment at trial through marginally probative cross-examination."[68]

Evidence of a witness's sexual conduct can be used to attack a witness's credibility only after the statutory procedure is followed.[69]  The defendant must file a written motion with an affidavit and an offer of proof that the witness's prior sexual conduct is relevant to attack the witness's credibility.[70]  If the court finds that the offer of proof is sufficient, it orders an *in camera* hearing to question the witness on the defendant's offer of proof.[71]  Lastly:

> (4) At the conclusion of the hearing, if the court finds that evidence proposed to be offered by the defendant regarding the sexual conduct of the complaining witness is relevant, and is not inadmissible, the court may issue an order stating what evidence may be introduced

---

[67] 11 *Del. C.* § 3508(a)(3) ("If the court finds that the offer of proof is sufficient, the court shall order a hearing out of the presence of the jury, if any, and at such hearing allow the questioning of the complaining witness . . . .").

[68] *Wright*, 513 A.2d at 1314.

[69] 11 *Del. C.* § 3508(a); *see Cooke v. State*, 97 A.3d 513, 546 (Del. 2014) (citing *Wright*, 513 A.2d at 1314–15).

[70] 11 *Del. C.* § 3508(a)(1)–(2).

[71] 11 *Del. C.* § 3508(a)(3).

16

by the defendant, and the nature of the questions to be permitted. The defendant may then offer evidence pursuant to the order of the court.[72]

The Rape Shield Statute requires that the proponent of the evidence demonstrate that it is "relevant." In this context, evidence of a witness's prior sexual conduct is relevant if it is probative of the witness's credibility.

## B.

The first question on appeal is whether the Superior Court applied an incorrect burden of proof to decide whether prior allegations of sexual abuse were false and therefore could be used by the defense at trial for impeachment purposes.[73] The trial

---

[72] 11 *Del. C.* § 3508(a)(4).

[73] The Delaware Rape Shield Statute addresses only the "sexual conduct of the complaining witness." 11 *Del. C.* § 3508. At oral argument, Massey's counsel claimed for the first time that the Rape Shield Statute does not apply because "sexual conduct" does not include false sexual abuse allegations. Oral Argument at 10:22 (The Court: "So are you saying today that we should not view this through the prism of Section 3508?" Counsel: "That's what I'm saying. It's . . . not a real 3507 [sic] prior sexual conduct of an alleged victim."). But in the Superior Court, Massey moved for an "11 *Del. C.* § 3508 *in camera* proceeding to admit evidence of the complaining witnesses' prior sexual conduct," including "serious claims of sexual abuse against other personages which were found to be unsubstantiated." A19–20 (Mot. *In Camera* Interview under § 3508, Jan. 20, 2023). Also, Massey failed to raise his new argument in the trial court and in his appellate briefs. In fact, he argued that the Superior Court misunderstood that the "precise issue" was whether "the offer of proof was sufficient *to proceed to an in-camera interview*, not whether it ultimately would be admissible." Appellant's Second Am. Opening Br. at 16 (emphasis added). His attempt to change course on appeal comes too late. *See* Supr. Ct. R. 8; Supr. Ct. R. 14(b)(vi)(A)(3). Thus, we need not decide whether false sexual abuse allegations qualify as "sexual conduct" under Delaware's Rape Shield Statute. *See* Rosanna Cavallaro, *Rape Shield Evidence and the Hierarchy of Impeachment*, 56 Am. Crim. L. Rev. 295, 307 (2019) ("If the circumstances of a false allegation did not involve any *actual* sexual conduct, . . . some courts have held that this impeachment . . . would not implicate the rape shield rule at all . . . ."); Applegate, *Reforming Rape Shields*, at 930 ("State legislatures should amend rape shield statutes to give guidance to courts on how to handle prior false accusation evidence.").

court followed *State v. Bailey*.[74]  In *Bailey*, the defendant's rape conviction was largely based on the testimony of the eleven-year-old victim.[75]  Our Court remanded the case for an evidentiary hearing to address newly discovered evidence during the appeal – an affidavit from the victim's mother that her daughter had accused five other people of rape.  During the remand hearing, the victim admitted that two of the accusations were false.[76]  After reviewing case law from our sister courts, the Superior Court decided it would follow the "majority rule" for admitting prior sexual abuse allegations – the defendant must show falsity "by clear and convincing evidence" to gain admissibility.[77]

Massey directs us to *Bryant v. State*.[78]  In *Bryant*, two children made seven sexual abuse allegations against their father but then recanted two.  Without holding an *in-camera* hearing, the Superior Court limited cross-examination to two of the recanted allegations.  We reversed and held that "the defendant should have been

---

[74] 1996 WL 587721 (Del. Super. Ct. Sept. 12, 1996).

[75] *Id.* at *1 (citing *State v. Bailey,* ID No. 9312009229 (Del. Super. Ct. Oct. 25, 1995) (Letter Op.)) ("The jury chose to believe the victim, who came across as a very credible witness.").

[76] The victim also disavowed two other allegations and maintained the last two allegations.  The court found that these four allegations, which had not been proven false, were irrelevant because they "would tend to confuse and mislead the jury since these allegations would lead inexorably to several mini-trials being subsumed within the trial of the charged offense."  *Id.* at *8 (applying D.R.E. 403).

[77] *Id.* at *4, *7.

[78] 1999 WL 507300 (Del. 1999) (TABLE).

afforded the opportunity to inquire of the [children] directly, out of the presence of the jury, whether any of the five excluded claims were false."[79]  Although we made it clear that "[t]he precise issue" was not before the Court in the appeal, we stated in *dicta* that, "[e]ven where the evidence is inconclusive as to falsity, prior allegations of sexual assault may be admitted to challenge credibility."[80]

As noted earlier, Massey brought his motion under the Rape Shield Statute. Like our statute, most state rape shield statutes are silent about whether prior false allegations of sexual assault can be used at trial to attack a witness's credibility.[81] The answer has been left to the courts, who have taken different approaches to the burden of proof and admissibility standards.[82]

---

[79] *Id.* at *3.

[80] *Id.* at *3 (first citing *State v. Oliveira,* 576 A.2d 111, 113 (R.I. 1990); and then citing *State v. Jacques,* 558 A.2d 706, 708 (Me. 1989)) ("The precise issue is not before us since the record is not complete with respect to the five excluded allegations . . . .").

[81] *See* R. Michael Cassidy, *Character, Credibility, and Rape Shield Statutes*, 19 Geo. J. L. & Pub. Pol'y 145, 156-57 (2021) ("Most state rape shield rules are simply silent on the subject of false allegations of sexual assault . . . . Evidence of the complainant's prior false allegations of sexual assault is expressly accounted for in the rape shield rules of only eight jurisdictions.") [hereinafter "*Cassidy*."].

[82] *Cassidy*, at 156-58 (describing different approaches).  It is important to note the distinction between use for impeachment purposes and admission as substantive evidence.  As Jules Epstein explains: "The difference between impeachment and substantive is one of evidentiary 'use.'  When admitted for impeachment purposes, evidence may be argued only for its impact on determining the believability of a witness, while evidence admitted substantively stands as proof of the occurrence (or non-occurrence) of a particular event." Jules Epstein, *True Lies: The Constitutional and Evidentiary Bases for Admitting Prior False Accusation Evidence in Sexual Assault Prosecutions*, 24 Quinnipiac L. Rev. 609, 613 n.18 (2006).

We are reluctant to announce a definitive rule in this appeal for several reasons. First, as noted earlier, even though Massey brought his motion under the Rape Shield Statute, it is unclear whether the General Assembly intended to include prior false sexual abuse allegations within the statutory definition of sexual conduct. Second, the parties have not briefed the question in a way that assists the Court in evaluating the competing approaches adopted by other states. Third, the question has a constitutional dimension, which was not fully developed by the parties and warrants further consideration.[83] And perhaps most importantly, as explained next, under any standard of review or procedure this Court might adopt, the Superior Court found as a factual matter that Massey did not offer *any* evidence of falsity, which is a minimum requirement to use prior false sexual abuse allegations at trial.

C.

After the remand hearing, the Superior Court held that Massey did not cast any doubt on the truthfulness of the prior sexual abuse allegations. The court observed that Massey failed to show "an appropriate purpose for introduction of this evidence[.]"[84] It found that:

> In this case[,] Defendant failed to make any showing of falsity, only self-serving assertions that the prior allegations may have been false accusations. There have been no recantations of any prior

---

[83] *Cassidy*, at 158-68 (reviewing cases involving Confrontation Clause issues with rape shield statutes).

[84] *Evidentiary Op.* at *8.

20

allegations . . . . In fact, both alleged victims referenced [their half-brother] in their forensic interview at the CAC following their allegations of abuse against Defendant. During that interview, both girls maintained that something had occurred with [their half-brother] previously.[85]

Massey also offered no evidence to support a "cry wolf" theory where claims of sexual assault were later retracted.[86] Testimony from the evidentiary hearing and the CAC report "contained absolutely no evidence of falsity, or that either L.M. or M.M. had ever recanted their stories."[87] In fact, the court found that the hearing testimony "essentially buttressed their original reports from 2015, 2017, and [2018], with allowances made for the young ages of the girls and the dimming of memories over time."[88] Massey failed to provide any evidence that either L.M. or M.M. recanted their statements, lied in an interview, or otherwise failed to tell the truth.

The Superior Court concluded that Massey's hearing evidence raised "no indicia tending to show" falsity. We defer to that factual finding on appeal. Under any standard of review or procedure this Court might adopt, the Superior Court

---

[85] *Id.* at *7.

[86] *Id.* at *5.

[87] *Id.* at *6.

[88] *Id*. *See generally id.* at *5–8 (reviewing the specific facts presented and comparing the facts presented at the remand hearing with the evidence from the prior CAC interviews at the time of each incident).

21

properly excluded from use at trial evidence of the daughters' prior sexual abuse allegations to attack their credibility.

III.

The second issue on appeal is whether the Superior Court improperly allowed one of Massey's daughters to hold a stuffed animal while testifying to comfort her. Massey claims that this accommodation prejudiced his substantive rights. As a general rule, "[i]n the absence of extraordinary circumstances . . . a trial judge should not make special accommodations *sua sponte*."[89] Special accommodations are typically made only if "it has been determined, upon motion, that the requesting party has demonstrated a 'substantial need' for their implementation."[90]

But we also recognize that child witnesses must be treated with "additional consideration" in Superior Court criminal proceedings.[91] This is because "sensitive issues may arise during a trial where young children will be subject to the extraordinary pressures of testifying."[92] In *Gomez v. State*, for instance, the trial judge *sua sponte* permitted the child witness to hold a stuffed animal for comfort

---

[89] *Czech*, 945 A.2d at 1094.

[90] *Id.*

[91] 11 *Del. C.* § 5131 ("The General Assembly finds that it is necessary to provide child victims and witnesses with additional consideration and different treatment than that usually required for adults. It is therefore the intent of the General Assembly to provide each child who is involved in a criminal proceeding within the Superior Court with certain fundamental rights and protections.").

[92] *Czech*, 945 A.2d at 1096.

while testifying.[93] We held that "the trial judge recognized that permitting [the child witness] to walk to the witness stand in the presence of the jury might unduly elicit sympathy" but "the trial judge addressed that risk and properly provided for [the child witness] to walk to the witness stand before the jury entered the courtroom."[94]

Here, the court only permitted M.M. to hold a stuffed animal after the State justified the need. After Massey objected, the court asked the State to explain why it was necessary.[95] The State then orally moved to allow the stuffed animal to be held while testifying because the children's counselor suggested that the stuffed animal would make them more comfortable.[96] Only M.M. brought a stuffed animal to the witness stand. The court – observing that M.M. was "a small child obviously distressed to be in a courtroom testifying" – permitted her to hold it.[97]

---

[93] *Gomez v. State*, 25 A.3d 786, 788 (Del. 2011).

[94] *Id.* at 799. In *Gomez*, the Court granted a mistrial on another ground unrelated to the special accommodation issue. The court instructed that, "[i]f the State wishes to make special accommodations at Gomez's new trial, the trial judge should permit them only if he determines, upon the State's motion, that the State has demonstrated a substantial need for their implementation." *Id.* We did not hold that the trial court's treatment of the risk of prejudice – having the witness walk in before the jury – affected the defendant's substantive rights or seriously undermined the fairness of the proceeding. We recognized that the judge properly addressed that risk, and in doing so, cured any potential prejudice that would have resulted had the jury seen the witness walking in with the comfort stuffed animal.

[95] *New Trial Op.* at *2.

[96] *Id.*

[97] *Id.* at *3; *see also id.* ("The State justified the use of the teddy bear . . . .").

23

The court also took steps to protect against the risk of prejudice. The trial judge asked the State to tell the children not to attract undue attention to the stuffed animal.[98] The court also asked M.M. to sit in the witness stand with the stuffed animal before the jury entered the courtroom.[99] The trial judge found that the stuffed animal was barely visible in her hand.[100] The record also does not reflect that the jury noticed the stuffed animal.[101]

Massey has not demonstrated that the Superior Court's decision prejudiced his case. Accordingly, the court did not exceed its discretion by allowing M.M. to hold a stuffed animal for comfort while testifying.

IV.

The judgment of the Superior Court is affirmed.

---

[98] *Id.*

[99] Massey argues that the jury saw M.M. approach the witness stand with the stuffed animal. The record is to the contrary. *See* B57 (Trial Tr. 53:9–16, Jan. 24, 2023) ("The bailiff: Are you ready for the jury, Your Honor? The court: Well we want to bring the witness in first. Hold on one second . . . All right. Then we can bring in the jury.").

[100] *New Trial Op.* at *3.

[101] *Id.* ("No further objections were made by Defendant during trial that would indicate M.M. was holding up the animal, waving it around, or otherwise making it noticeable to the jury.").